[Civ. No. 6967.   Fourth Dist.   July 22, 1963.]

QUAN SHEW YUNG et al., Plaintiffs and Respondents, v. MACK J. WOODS et al., Defendants and Appellants.

Earl C. Broady for Defendants and Appellants.

C. F. Sturdevant, Jr., for Plaintiffs and Respondents.

GRIFFIN, P. J.—Plaintiffs, cross-defendants and respondents Quan Shew Yung and wife brought this action against defendants, cross-complainants and appellants Mack

J. Woods and Ethel Mae Woods (erroneously sued as Mary Woods), husband and wife, for specific performance of a contract to sell two contiguous lots on which were located an old hotel, consisting of sleeping rooms on the second floor and with restaurant operations on the first floor, and at one time two old houses, in El Centro.

It appears that this property was originally owned by Mary Ferguson, a widow (also known as Mary Woods), who lived a substantial portion of the time with her son, Mack J. Woods and his wife in Los Angeles.

On August 8, 1952, she deeded the property to herself in the name of Mary Woods, a widow, and to Mack J. Woods and Ethel Mae Woods, husband and wife, all as joint tenants. Throughout her residence in Los Angeles, Mary Woods (Ferguson) employed one Jack Webster of El Centro, an old friend, to handle her rentals, collect rents, procure the making of repairs, and on occasion to seek purchasers for this property. Mack Woods and his wife also utilized Webster's services in this regard on the occasion when Mack reported to Webster, by letter dated April 28, 1955, that his mother was permitting him to have the management of the property.

The entire property was condemned by city authorities under a notice dated August 15, 1956, and the two houses were destroyed by fire prior to November 1957. After the condemnation, and before December 1957, Mrs. Woods (Ferguson) asked Webster to find a buyer for the hotel and he thereafter received offers which were communicated to Mrs. Woods but which failed to result in a sale. Thereafter, Webster procured an expert appraisal of the property and it was appraised at $3,000. This appraisal was furnished to Mack and his wife Ethel Mae by letter dated January 11, 1956.

From time to time up to November 1957, Mr. Webster made attempts to interest plaintiff Mr. Yung in the purchase of the Isa Hotel. A "for sale" sign had been placed on the property. Some time later Yung offered Webster $3,000 for the entire property and this offer was communicated to Mary Woods and Mack J. Woods by Webster.

On November 4, 1957, Mack Woods wrote Webster that his mother was nervous and could no longer sign her name and she "has left all her business to me again." He then stated: "Now about the sale of the place, $3,000 cash is okay with her so you can tell the man okay." Plaintiff Yung was contacted and was shown the authorization. On November 29, 1957, Mack Woods wrote again to Mr. Webster that it would

require too much money to repair the hotel and he was tired of the whole thing, "so if the man still wants to buy the place for $3,000.00, I will sell" and he stated, "those pieces of furniture in the hotel, stove and the balance of the things, sell them for whatever you can get. $100.00 is cheap enough I think so use your own judgment about it. So let me hear from you at your earliest convenience." In the letter of November 4, 1957, Mack also instructed Webster to thereafter deposit all rentals in the joint account of Mack and Ethel Mae.

Plaintiff Yung was shown this letter and he accepted it and telephoned Mr. Woods to verify the sale. Mack Woods told him that he had authorized the sale and said that the furniture went with it. The question of possession and making necessary repairs and reconstruction was discussed and Mack Woods told plaintiff Yung, "Go ahead with it." Plaintiff Yung did so and expended over $6,000 on improvements. He called Mack Woods on three subsequent occasions as to why he had not signed the escrow instructions and was told by Woods that he would be down to the Valley soon. On January 6, 1958, he again wrote Webster apologizing for not writing sooner, and said that the escrow was "at a standstill," but, "When the deal is completed regarding the sale of the property there you will get your commission. . . ." On December 6, 1957, plaintiffs went into escrow, deposited $3,000 and prepared escrow papers, copies of which were personally sent to defendants and Mrs. Woods (Ferguson) for signatures. At least five letters were thereafter sent to defendants in connection with the escrow and no reply was received. Apparently Mack Woods did not have the parties sign them.

Some months after the remodelling was completed and plaintiffs had taken possession of the property, Mack Woods came down and apparently saw the improvements made and then approached Mr. Yung and said that if he wanted that place the price would be $8,000, not $3,000. Yung then said he "blew his top" because of the prior promises Woods made to him.

Plaintiffs brought this action for specific performance of the agreement. Defendants filed a cross-complaint to quiet title, for ejectment, trespass, accounting and injunction. The court found in favor of plaintiffs, ordered specific performance by defendants and found for plaintiffs on defendants' cross-complaint. It specifically found that on December 6, 1957,

510

defendants Mack J. Woods and Ethel Mae Woods entered into an agreement, in writing and orally, whereby defendants agreed to sell and plaintiffs agreed to buy said real property for $3,000, its reasonable value; that plaintiffs tendered the purchase price and demanded a conveyance; that defendants represented to the plaintiffs that they would execute a conveyance pursuant to said agreement and further represented to plaintiffs that plaintiffs could safely proceed with the improvement of said real property; that, in reliance thereon, plaintiffs took possession of said real property on or about January 1, 1958, and expended sums in excess of $5,000 remodeling and improving said real property, all with the knowledge and consent of the defendants; that defendants refused to convey said real property to plaintiffs and wholly failed to keep and perform their part of said agreement.

█ Defendants' first argument on appeal is that the letters carried no legal description of the property and therefore the agreement to sell was indefinite in this respect. The property here involved and its location were well known to Webster, to plaintiffs and to defendants. It was not shown that defendants owned any other property in El Centro. In fact, the evidence indicates that they owned no other property there. (*Pray* v. *Anthony*, 96 Cal.App. 772 [274 P. 1024].) The escrow instructions did contain a specific description of the property and the trial court considered it in connection with the other evidence pertaining to the whole transaction and the agreement. The question of the identity of the property was not raised at the trial. Sufficient description was indicated to authorize the trial court to find that this was the property intended. (*Needham* v. *Abbot Kinney Co.*, 217 Cal. 72, 76 [17 P.2d 109].) *Beverage* v. *Canton Placer Mining Co.*, 43 Cal.2d 769, 774, 776 [278 P.2d 694], states that the memorandum affecting the sale of real property should disclose a description which is itself definite and certain, but, alternatively, a description fulfills the test of reasonable certainty if it furnishes a "means or key" by which the description may be made certain and identified with its location on the ground; and a description or designation of realty, in itself of meagre and doubtful character, may be deemed sufficient on its being made to appear by proper allegation and proof that at the place so indicated vendor owned premises answering to its terms and owned at that place no other such property.

It is Mack J. Woods' testimony that he had lot No. 2 in mind

when making the offer and not lot No. 1, upon which the hotel was located. Webster testified that the hotel occupied lot No. 1 but that the steps and other portions of it did extend over on lot No. 2. The court found that Woods intended the property to be sold to be both lots No. 1 and No. 2, including the hotel property, and the evidence fully supports this finding.

The parties named in the agreement were sufficiently identified. Plaintiff Yung identified himself as the person to whom the offer was made, through Mr. Webster, and the telephone calls and proposed escrow instructions sent to defendants sufficiently apprised Woods of plaintiffs' name and identity. *Cisco* v. *Van Lew*, 60 Cal.App.2d 575, 581 [141 P.2d 433], is cited by defendants as being opposed to this holding. The two cases are factually distinguishable. Plaintiffs here were not nominees, as they were in the *Cisco* case.

An agreement for the purchase or sale of real property does not have to be evidenced by a formal contract drawn with technical exactness in order to be binding. A memorandum of the agreement (Civ. Code, § 1624, subd. 4) is sufficient, and this may be found in one paper or in several documents, including an exchange of letters or telegrams or both, or in a letter from the vendor to the purchaser which is accepted and acted upon by the latter. (*King* v. *Stanley*, 32 Cal.2d 584 [197 P.2d 321].) Proffered escrow instructions were also considered in the *King* case.

Defendants' next argument is that there was no meeting of the minds of the parties to the agreement and accordingly no sufficient offer and acceptance. (Citing *Tuso* v. *Green*, 194 Cal. 574 [229 P. 327].) The evidence sufficiently shows such offer and acceptance, at least on behalf of Mack Woods individually and as agent for his wife, and Mrs. Woods (Ferguson).

It is contended that neither his wife nor Mrs. Woods (Ferguson) ever signed any writing giving authority of Mack Woods as agent for them, authorizing the sale of their property, and accordingly the contract between plaintiffs and their agent was invalid and unenforceable, under Civil Code, section 1624, subdivision 4; that when property is held in joint tenancy by husband and wife, it is impossible to compel the wife to perform, based on an agreement made by the husband alone. (Citing *Eagle Oil & Refining Co.* v. *James*, 52 Cal.App.2d 669 [126 P.2d 880].) There may be merit to this argument if the wife is not now estopped from such a claim, particularly as here, with full knowledge, as the court

found, that she knew of the agreement and contemplated sale of her interest and allowed the purchasers to enter and occupy the premises and reconstruct, at great expense, the hotel property for occupancy and operate it without objections under the agreement made. In Restatement of Contracts, section 197, page 260, it is said:

"Where, acting under an oral contract for the transfer of an interest in land, the purchaser with the assent of the vendor

"(a) makes valuable improvements on the land, or

"(b) takes possession thereof or retains a possession thereof existing at the time of the bargain, and also pays a portion or all of the purchase price,

the purchaser or the vendor may specifically enforce the contract."

In *Calanchini* v. *Branstetter*, 84 Cal. 249, 253 [24 P. 149], it was held that a verbal contract for the sale of land is taken out of the operation of the statute of frauds and will be specifically enforced when there has been a part performance of the contract by the taking of actual possession of the land by the vendee with the consent of the vendor, or by the making of valuable improvements upon the land on the faith of the contract. See also Restatement of Contracts, section 90, page 110, and section 197, page 260. The ground upon which this doctrine is based is that the vendee might be treated as a trespasser and thus be placed in a situation which would be a fraud upon him if he could not invoke the protection of the contract. See also *Meridian Oil Co.* v. *Dunham*, 5 Cal. App. 367, 369 [90 P. 469]; *Haskell* v. *First Nat. Bank*, 33 Cal.App.2d 399, 402 [91 P.2d 934]. It was there held that underlying all this reasoning is the principle that an oral trust in land is not a nullity but is voidable at the election of the voluntary trustee, and when such trustee has by his conduct ratified and affirmed the trust and induced others to change their position because of it, the doctrine of equitable estoppel comes into play. In the instant case the evidence might well indicate that the plaintiff purchasers took possession of the property with the specific consent of the sellers, made extensive improvements upon the property with the knowledge and consent of the sellers, and plaintiffs deposited all of the purchase price in the escrow.

"The right of courts of equity to hold a person estopped to assert the statute of frauds, where such assertion would amount to practicing a fraud, cannot be disputed. It is based upon the principle 'thoroughly established in equity, and ap-

plying in every transaction where the statute is invoked, that the statute of frauds, having been enacted for the purpose of preventing fraud, shall not be made the instrument of shielding, protecting, or aiding the party who relies upon it in the perpetration of a fraud or in the consummation of a fraudulent scheme.' '' (*Seymour* v. *Oelrichs,* 156 Cal. 782, 794 [106 P. 88, 134 Am.St.Rep. 154].)

It was said in *Glass* v. *Hulbert,* 102 Mass. 24, 35 [3 Am. Rep. 418] : ''The fraud most commonly treated as taking an agreement out of the statute of frauds is that which consists in setting up the statute against its enforcement, after the other party has been induced to make expenditures, or a change of situation in regard to the subject-matter of the agreement, or upon the supposition that it was to be carried into execution, and the assumption of rights thereby to be acquired; so that the refusal to complete the execution of the agreement is not merely a denial of rights which it was intended to confer, but the infliction of an unjust and unconscientious injury and loss. In such case, the party is held, by force of his acts or silent acquiescence, which have misled the other to his harm, to be estopped from setting up the statute of frauds.''

To the same effect is *Monarco* v. *Lo Greco,* 35 Cal.2d 621, 625 [220 P.2d 737] ; *Berkey* v. *Halm,* 101 Cal.App.2d 62, 67 [224 P.2d 885].

While there is no direct testimony that the wife or Mrs. Woods (Ferguson) personally joined in the agreement to sell and to give possession to plaintiffs, and granted permission to expend money to reconstruct the hotel before title was passed, the implication and their conduct, and the participation of Mr. Woods, as their agent, to give such permission, can well be inferred, and it was so found by the trial court. The letters to Webster, from Mr. Woods, which were shown to plaintiffs, clearly indicate that he was authorized by the owners to make the agreements claimed. Although the wife testified that she did not have anything to do with the sale of the property nor did she give her husband permission to bind her in the transaction, she did testify that she owned the property in joint tenancy with the others; that she left the management of the property from 1952 to 1957 to her mother-in-law and her husband, and she relied upon them to manage and operate it. In a communication of January 11, 1956, directed to both Mr. and Mrs. Mack J. Woods, Mr. Webster told both husband and wife that he was working on the sale of the ''hotel property'' ; that offers had been low ; that

he had the property appraised and enclosed the bill for doing so, plus repair work; that he told of an offer of $5,000 but repair work would be $11,000, so the offer was withdrawn, but plaintiffs made an offer of $3,000 cash and he told them to present the matter to their mother (Mrs. Ferguson) because it was not up to him to ''decide a deal like this.'' He asked them to come down and see for themselves and do whatever it was right to do; and said that to wreck the building would cost more than the material was worth.

Both Ethel Mae Woods and Mrs. Woods (Ferguson) must have had knowledge of the sale and the terms, because they were personally mailed a copy of the escrow instructions showing the terms and a description of the property.

The finding that they did have knowledge of the transaction, and that Mack J. Woods was acting for them, has evidentiary support.

Objection was made by defendants during trial to certain testimony and the admissibility of certain evidence. Webster testified, as plaintiffs' witness, that he believed the fair market value of the property was less than $3,000. He related the length of time he had lived in El Centro (since 1914); that he had owned and sold nearby property (one-half block from the property here involved) and had knowledge of other sales in that neighborhood, both vacant and improved. The trial court properly overruled the objection and stated that it went to the weight of the testimony and not its admissibility.

Considering the cost of demolition, the evidence produced shows that the value of the land itself was the principal factor. No prejudicial error is noted. The court found $3,000 to be a just and reasonable price and accordingly the consideration was adequate. A fair interpretation of the evidence produced fully justifies the judgment entered.

Judgment affirmed.

Coughlin, J., and Brown (Gerald), J., concurred.