[Civ. No. 27580. First Dist., Div. Four. Apr. 30, 1970.]

JEAN HOWDEN-GOETZL et al., Petitioners, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
WESTERN URBAN REDEVELOPMENT INVESTMENT CORPORA-
TION et al., Real Parties in Interest.

**COUNSEL**

Patrick, Buchanan & Phillips, Theodore W. Phillips and Barbara Ashley Phillips for Petitioners.

No appearance for Respondent.

Zang, Friedman, Haiken & Damir and Marvin B. Haiken for Real Parties in Interest.

**OPINION**

CHRISTIAN, J.—Petitioners seek a writ of mandate to compel respondent court to set aside its order expunging a notice of lis pendens or to increase the amount of the undertaking from $10,000 to $670,000.

Petitioners are plaintiffs in a shareholders' derivative action on behalf of Educational Securities Corporation (ESC), attacking a refinancing transaction and foreclosure proceeding whereby the defendants (real parties herein) obtained title to ESC's major asset, a proprietary hospital.

Under the refinancing transaction, real party Western Urban Redevelopment Corporation and High-Far Corporation purchased 416,000 shares of ESC's $1 par value stock for one cent per share, taking control of ESC. Western and High-Far also loaned ESC $160,000, taking promissory notes secured by second deeds of trust. The plan was approved by the Corporations Commissioner.

Despite the refinancing transaction the hospital continued in financial difficulty. Additional sums were loaned to ESC by Western Urban and High-Far. A default occurred under the first deed of trust; Western Urban cured the default and purchased the property at a trustee's sale under the second deed of trust. The bid was $232,754.86, the total debt then owed by ESC to Western Urban and High-Far.

After the sale, the hospital was reopened as Brookdale General Hospital. Title was subsequently transferred to a corporation of that name, owned 75 percent by Western Urban and 25 percent by High-Far's successor, William C. Abeel.

Petitioners brought suit alleging breach of fiduciary duty by its controlling shareholders and Western Urban, misrepresentation and nondisclosure of facts to the Corporations Commissioner in obtaining a stock permit and issuance of securities in violation of the terms of the permit. Petitioners sought damages and other relief, including imposition of a constructive trust upon the hospital. Petitioners recorded a notice of lis pendens as to the hospital property.

Trial of the action resulted in a judgment for the defendants; an appeal from the judgment is pending. After judgment, but before notice of appeal was filed, the court on motion of real parties ordered the notice of lis pendens expunged upon real parties' posting a $10,000 bond, "which sum the Court determines and adjudges to be the value of the interest of the plaintiffs . . . in the property affected by the action." There had been a showing that the hospital was continuing to lose money, that the hospital corporation wanted to sell, and that unless the notice of lis pendens were removed to allow a sale the corporation would become insolvent, losing the property by foreclosure.

In the present proceeding petitioners contend that the trial court abused its discretion in expunging the notice of lis pendens upon an undertaking of only $10,000. ■ Mandate is made available for the purpose of review-

ing the order expunging the lis pendens, under Code of Civil Procedure section 409.4, adopted in 1968 as part of a general scheme (Code Civ. Proc., §§ 409.1-409.6) to permit the courts to control misuse of the lis pendens procedure as a lever to force settlements.[1] It is provided by section 409.2[2] that "the court in which the action is pending" may expunge a lis pendens upon receiving an undertaking by the moving party for indemnification of the other party "for all damages which he may incur if the notice is expunged and the moving party does not prevail. . . ."

No decision is reported in California dealing with the new provisions and considering the standards which should be applied in reviewing orders made under the statute by trial courts. Because an appeal is pending a preliminary question is whether, if the bond were shown in the present proceeding to have been inadequate, the remedy would be a writ directed to the trial court. It could perhaps be argued that when an appeal has been taken the trial court can no longer be regarded as "the court in which the action is pending" within the meaning of section 409.2, and that the party resisting expunction of the lis pendens should, in the pending appeal, move for an order enlarging the bond. The statute does not deal directly with this question but a close analogy is seen in the procedures established by Code of Civil Procedure section 542a, for extension of a lien of attachment on real property by "the court in which the action is pending." In *Palmer* v. *Fix* (1928) 205 Cal. 472, 474 [271 P. 749], the Supreme Court interpreted the clause, "the court in which the action is pending," to mean the court where the action was commenced. The court concluded that the action is pending in the trial court "from the time of its commencement until its final determination upon appeal, . . ." ▮ An attachment of real property and a notice of lis pendens are similar in purpose; the rationale of *Palmer* can

---

[1] See Note, *Abuses of the California Lis Pendens: An Appeal for Legislative Remedy* (1966) 39 So.Cal.L.Rev. 108; Interim Report of the Committee on Administration of Justice of the State Bar, Dec. 12, 1967. Earlier proposals requiring the party noticing the lis pendens to post a bond had been rejected by the Legislature. (See State Bar 1966 Conference Resolutions 8 and 17, 42 State Bar J. 200-202; State Bar 1967 Resolution 1, 43 State Bar J. 314; Sen. Bill 1458 (1967).

[2] Section 409.2. "At any time after notice of pendency of an action has been recorded pursuant to Section 409 or other law, the court in which the action is pending may order that the notice be expunged if the moving party shall have given an undertaking of such nature, in such amount and within such time as shall be fixed by the court after notice and hearing, such undertaking to be to the effect that the moving party will indemnify the party recording the notice for all damages which he may incur if the notice is expunged and the moving party does not prevail and if the court finds that adequate relief can be secured to the party recording the notice by the giving of such undertaking. Upon recordation of a certified copy of such order in the office of the county recorder in which the notice of the pendency of the action was recorded, any purchaser or encumbrancer may thereafter deal with the property described in such notice free and clear of the effect of the action whether or not he has actual notice of the pendency of the action."

therefore be applied to interpret the identical clause "the court in which the action is pending" in Code of Civil Procedure section 409.2 to refer at all stages to the trial court; therefore, despite the pendency of an appeal, it is proper to review, by the writ procedure established by section 409.4, the order expunging lis pendens.

Petitioners first contend that because the litigation assertedly involves title to specific real property expunction of the lis pendens would be inappropriate no matter how large the bond. But every lis pendens involves an asserted claim "concerning real property or affecting the title or right of possession of real property . . ." (Code Civ. Proc., § 409.) Therefore to accept petitioners' argument would be to vitiate the remedial statute. Therefore we must consider the adequacy of the bond. The California statute (Code Civ. Proc., § 409.2) was based generally upon a New York statute (New York Civil Practice Law and Rules, § 6515). Accordingly the parties have cited New York cases as illustrating possible constructions of the new California statute. Real parties point to such cases as *Ronga* v. *Alpern* (1964) 45 Misc.2d 1029 [258 N.Y.S.2d 731], as indicating that in fixing the amount of the bond the court may take account of the prospects that the party who recorded the lis pendens will ultimately prevail. But we note that the New York statute does not provide, as does Code of Civil Procedure section 409.2, that the undertaking must be "to the effect that the moving party will indemnify the party recording the notice for all damages which he may incur if the notice is expunged and the moving party does not prevail. . . ." At first reading, the quoted language would appear to indicate that the order expunging lis pendens must set the bond in an amount representing the claimed value of the total relief sought to be protected by the lis pendens. That construction, contended for by petitioners, would greatly diminish the remedial effect of the legislation; in a case where the court felt unable to grant relief under section 409.1 upon a determination of the claimant's actual bad faith, it would be possible for the claimant to impose severe penalties (not supportable by a fair balancing of equities) upon his adversary by demanding a large bond based on an abstract statement of the "damages which he may incur." On petitioner's theory, the court would be compelled to require a bond in the amount demanded even though an informed appraisal of the case would indicate that a smaller bond would protect the claimant's substantial interests. Other language in section 409.2 suggests that the Legislature intended to give the court a broader discretion in fixing the amount of the bond. The operative language, concerning the action to be taken by the court, is simply that the amount of the bond "shall be fixed by the court." The succeeding provision is relied on by petitioners. It states that the undertaking shall be *"to the effect* that the moving pary will indemnify the party recording the notice for all damages which he may incur if the notice is expunged and the moving

party does not prevail." (Italics added.) This language refers to the liability of the moving party, as principal obligor, in terms of "all damages." The broadly inclusive term "all damages" also appears to have been intended to define the kind of risk to be covered by the bond. But that language does not manifest an intention to remove all discretion from the court in fixing the *amount* of the bond. ■ The clear purpose of the entire enactment suggests that it was intended that the court have such discretion. That construction is further supported by the presence in section 409.2 of language which conditions the granting of any relief whatever upon a finding by the court "that adequate relief can be secured to the party recording the notice by the giving of such undertaking." That language would have been superfluous if the Legislature had intended to deny to the court discretionary power to fix the amount of the bond in an amount less than the asserted value of a total victory by the claimant. ■ We conclude, therefore, that it was proper for the trial court to fix the amount of the bond upon an appraisal of all of the evidentiary material presented on the motion, including the evidence received at trial; the judge was not required to speculate on the prospects of the litigation on the basis of a mere glance at the pleadings; he knew that, subject to possible reversal on appeal, the factual issues in the case had already been resolved in favor of the moving party.

The showing made by real parties indicates that on one, not unreasonable, view of the case the net equity value which might be subject to petitioners' claims is a negative figure. It is true that on another view of the case, the value, subject to the lis pendens, is substantial; even so, petitioners' prospects of success on retrial after a hypothetically successful appeal may not be great. In these circumstances we cannot say that it was an abuse of discretion for the court to determine that a bond in the amount of $10,000 secured "adequate relief" to petitioners.

The alternative writ is discharged; the petition for mandate is denied.

Devine, P. J., and Rattigan, J., concurred.

A petition for rehearing was denied May 27, 1970, and petitioners' application for a hearing by the Supreme Court was denied June 24, 1970.