[Civ. No. 10222. Fourth Dist., Div. Two. July 2, 1970.]

UNITED PROFESSIONAL PLANNING, INC., Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
JAMES GOODMAN et al., Real Parties in Interest.

378

**COUNSEL**

Ambrose & Malat, Gerald A. Malat and Michael B. Magloff for Petitioner.

No appearance for Respondent.

Gunderman & Riddet and Gary E. Gunderman for Real Parties in Interest.

**OPINION**

KAUFMAN, J.—Pursuant to section 409.4 of the California Code of Civil Procedure, plaintiff petitions for a writ of mandate to command the respondent court to vacate its order expunging plaintiff's lis pendens. James Goodman and Joseph Goodman, defendants, are the real parties in interest.

Plaintiff sued for specific performance of an alleged contract to convey real property.[1] Motions by defendants for summary judgment and judgment on the pleadings were denied. Thereafter, trial commenced on the merits. At the close of plaintiff's case, judgment was entered for defendants under section 631.8 of the Code of Civil Procedure. Plaintiff filed a notice of appeal from this judgment on October 9, 1969, which appeal is pending.

On October 22, 1969, approximately two weeks after the filing of the notice of appeal, defendants moved the court, in the law and motion department as distinguished from the trial department, to expunge plaintiff's lis pendens pursuant to section 409.1 subdivision (b) of the Code of Civil Procedure on the ground that plaintiff commenced the action for specific performance "for an improper purpose and not in good faith." By order dated December 30, 1969, pending the appeal on the merits, the court made its order granting defendant's motion and expunging the lis pendens.

Plaintiff contends that the respondent court proceeded without and in excess of its jurisdiction in considering and granting the motion to expunge after plaintiff's notice of appeal was filed and that, in any event, the court erred in finding that the action for specific performance was commenced for an improper purpose and not in good faith.

---

[1]The complaint, in separate counts, also sought recovery of a real estate commission in connection with the sale and damages for expenses allegedly necessarily incurred by plaintiffs in attempting to carry out the contract and damages for loss of use and possession of the property.

### Jurisdiction to Make Order

 We have concluded that the trial court did not proceed without or in excess of its jurisdiction in considering the motion to expunge the lis pendens and in making its order after the notice of appeal had been filed.

Section 916 subdivision (a)[2] of the Code of Civil Procedure provides that, with exceptions not here pertinent, "the perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, including enforcement of the judgment or order, but the trial court may proceed upon any other matter embraced in the action and not affected by the judgment or order." In terms of the statutory language, we are called upon to determine whether an order expunging a lis pendens is a matter "embraced" in a judgment denying specific performance or "affected" thereby or whether the expungement of the lis pendens is an "other matter embraced in the action and not affected by the judgment or order." Section 409.1[3] of the Code of Civil Procedure authorizing the trial court to expunge a lis pendens was enacted in 1968, and the question appears to be one of first impression.

The language of section 916 is not particularly helpful in resolving the question, for, whether or not a matter is "embraced" in the judgment or "affected" thereby is a legal conclusion involving the very determination we are called upon to make.

The language of section 409.1 when added to several somewhat analogous cases gives some indication of the proper answer. First, we note that expungement may be made if the action has been commenced *or prosecuted* for an improper purpose and not in good faith. The words "or prosecuted" suggest that the trial court may exercise its power after trial as well as prior thereto, and the propriety of the expungement of a lis pendens after trial and judgment but prior to perfection of an appeal under section 409.2 has been recognized. (*Howden-Goetzl* v. *Superior Court*, 7 Cal. App.3d 135, 138-139 [86 Cal.Rptr. 323].) This does not answer the question, however, whether the trial court may take such action after the

---

[2]Formerly section 946.

[3]Section 409.1, in pertinent part, reads as follows: "At any time after notice of pendency of an action has been recorded . . ., the court in which the action is pending shall, upon motion of a party to the action supported by affidavit, order that the notice be expunged, if it is shown to the satisfaction of the court, by clear and convincing proof, that:

(a) The action does not affect title to or right of possession of the real property described in the notice; or

(b) Insofar as the action affects title to or right of possession of the real property described in the notice, the party recording the notice has commenced or prosecuted the action for an improper purpose and not in good faith."

perfection of an appeal in the face of section 916 of the Code of Civil Procedure expressly limiting the power of the trial court after an appeal has been filed. (Cf. *Vosburg* v. *Vosburg,* 137 Cal. 493, 494-495 [70 P. 473].) Similarly, the language in section 409.1 that the expungement may be made "at any time after notice of pendency of an action has been recorded" is of little assistance inasmuch as it does not deal with the problem of a pending appeal, while section 916 expressly does. (Cf. *Vosburg* v. *Vosburg, supra,* at pp. 494-495.)

More helpful, perhaps, is the language in section 409.1 that the expungement is to be made by "the court in which the action is pending." It would appear that under the provisions of section 916, after the perfection of an appeal, the action is pending in the trial court for some purposes and in the appellate court for other purposes. However, identical language, "the court in which the action is pending," in section 542, subdivision (a), of the Code of Civil Procedure, dealing with the extension of a lien of attachment on real property, was interpreted in *Palmer* v. *Fix,* 205 Cal. 472, 474 [271 P. 749], as meaning the court where the action was commenced, the trial court. *Palmer* held that, notwithstanding the case was on appeal, a motion for extension of the lien was to be addressed to the trial court. This interpretation and holding in *Palmer* was relied upon by the court in the recent case of *Howden-Goetzl* v. *Superior Court, supra,* 7 Cal.App.3d 135, 138-139, in its holding that the identical language in section 409.2 of the Code of Civil Procedure meant the trial court and that, if the evidence warranted it, it would be proper procedure, pending appeal, for the trial court to increase the amount of the undertaking provided for by section 409.2.

Of course, neither the *Palmer* case nor the *Howden-Goetzl* case is completely analogous, for the extension of the lien period or the increasing of the amount of an undertaking would tend to preserve the rights and remedies of the plaintiff-appellant pending appeal, whereas an order for expungement of the lis pendens tends to diminish the potential rights and remedies of the plaintiff-appellant and to render his appeal futile. This is precisely plaintiff's contention. It urges that the expungement of a lis pendens may, as a practical matter, render a suit for specific performance meaningless (see *Brownlee* v. *Vang,* 206 Cal.App.2d 814, 816 [24 Cal.Rptr. 158]), and, if the action of the trial court would tend to render the pending appeal futile, such action should be classified as "embraced" within or "affected by" the judgment and prohibited in accordance with section 916 of the Code of Civil Procedure. (*Lerner* v. *Superior Court,* 38 Cal.2d 676, 680 [242 P.2d 321]; *Vosburg* v. *Vosburg, supra,* 137 Cal. 493, 496.)

Upon initial consideration, this contention of plaintiff would appear to have considerable merit, but, upon further reflection, it is apparent that the

possibility that the final judgment will be rendered meaningless is inherent in the very power conferred upon the trial court to expunge the lis pendens under section 409.1. The effectiveness of an appeal is not any more greatly affected by expungement after the notice of appeal has been filed than it would have been had the order for expungement been made prior to the perfection of the appeal.

Indeed, the Legislature's conferring upon the trial court this unique and somewhat anomalous power indicates that the expungement of a lis pendens should be considered collateral to the judgment and not "embraced" within it or "affected" thereby. Upon finding that the action concerning the title or possession to real property was commenced or prosecuted for an improper purpose and not in good faith, the trial court is empowered to expunge the lis pendens, but there is no corresponding provision for dismissal of the action. In other words, the trial court may expunge the lis pendens and, nevertheless, proceed to try the action and render judgment, conceivably in favor of the plaintiff. It would thus appear that, in enacting section 409.1, the Legislature must have considered the expungement of the lis pendens as being collateral to any judgment to be rendered.

Moreover, in the absence of compelling analogous case law or persuasive language in the statutes, the rule should be adopted which best serves the efficient and proper administration of the courts. A rule upholding the power of the trial court does so.

Section 409.1 was enacted in an effort to mitigate against and correct alleged abuses in the use of lis pendens. (*Howden-Goetzl* v. *Superior Court, supra,* 7 Cal.App.3d 135, 138; see, Review of Selected 1968 Code Legislation (Cont. Ed. Bar) pp. 60-61; Comment, *Abuses of the California Lis Pendens: An Appeal for Legislative Remedy,* 39 So.Cal.L.Rev. 108.) It is unlikely that the Legislature intended that the remedy be available at all times prior to appeal but not available during the time, often protracted, the case is on appeal. ▮ It would seem obvious, therefore, that, during appeal, either the trial court or the appellate court has the power to expunge under the statute. A rule that the trial court is without jurisdiction would necessitate motions for expungement being addressed to the appellate court. ▮ Although section 409.1 provides for the submission of affidavits, it does not foreclose the calling of witnesses or presentation of other evidence at the hearing on the motion. (Cf. *Perez* v. *Perez,* 111 Cal.App.2d 827, 828-829 [245 P.2d 344].) ▮ Obviously, a trial court is better equipped than an appellate court to handle such proceedings.

▮ Furthermore, section 409.4 of the Code of Civil Procedure provides for immediate review of the order of expungement by petition for writ

of mandate. If the motion must be addressed to the appellate court, original review is in the California Supreme Court, and the proper administration of justice is not served by a rule which would unduly burden that court with original proceedings.

Secondly, the adoption of a contrary rule would tend to promote unnecessary and unseemly maneuvering by the parties following a judgment adverse to plaintiff on the merits in the trial court. The defendant would be encouraged to engage in tactics to delay the time when the plaintiff could file his notice of appeal so that the defendant's motion to expunge could be made and determined prior to the filing of the notice of appeal. The plaintiff would be encouraged to engage in tactics designed to advance the date on which he could file his notice of appeal. Such considerations and tactics would not be conducive to the orderly administration of post-trial procedures such as the making of findings of fact and conclusions of law, the resolution of objections thereto, and motions for new trial.

For the foregoing reasons, we hold that the trial court did not act without or in excess of its jurisdiction in considering the motion to expunge the lis pendens and in making its order during the pendency of the appeal.

### Error in Finding of Improper Purpose and No Good Faith

Plaintiff contends that the trial court erred in determining that the action was commenced for an improper purpose and not in good faith.[4]

For expungement of the lis pendens on this ground, the existence of the improper purpose and lack of good faith must be "shown to the satisfaction of the court, by clear and convincing proof." (Code Civ. Proc., § 409.1, *supra*.) The standard of "clear and convincing" proof is a more exacting measure of persuasion than the customary "preponderance." (See Witkin, Cal. Evidence (2d ed. 1966) p. 190.) The phrase has been defined to mean "clear, explicit and unequivocal," "so clear as to leave no substantial doubt" and "sufficiently strong to command the unhesitating assent of every reasonable mind." (See *Sheehan* v. *Sullivan,* 126 Cal. 189, 193 [58 P. 543]; Witkin, Cal. Evidence (2d ed. 1966) 190, *supra*.)

The requirement of clear and convincing proof was undoubtedly inserted

---

[4]The actual finding contained in the court's minute order was that "the recording of the notice of Lis Pendens was done for an improper purpose and not in good faith." Neither of the parties makes any point of the fact that the finding was not in the precise language of the statute, and we do not believe it significant in this case. The motion to expunge was made on the ground that the action for specific performance was commenced for an improper purpose and not in good faith, and the court's granting the motion makes it clear that it found that the action was commenced for an improper purpose and not in good faith.

into the statute by the Legislature in recognition of the rather drastic effect expungement may have upon the relief sought. In recognition thereof and in observance of the legislative mandate, the trial court should studiously adhere to this requirement and resolve doubtful cases by denying the motion, particularly in view of the alternative procedure provided for in section 409.2 ■ But, the requirement of clear and convincing proof is one primarily for application by the trial court. On appeal, the test is whether the trial court's determination is supported by substantial evidence. (*Beeler* v. *American Trust Co.*, 24 Cal.2d 1, 7 [147 P.2d 583]; *Stromerson* v. *Averill*, 22 Cal.2d 808, 815 [141 P.2d 732].)

We note that, in the case at bench, the proof on which the trial court made its determination consisted wholly of affidavits and documentary material in the file,[5] but the substantial evidence test is also applicable to appellate review of orders rendered on the basis of conflicting affidavits. (See *Gottesfeld* v. *Richmaid Ice Cream Co.*, 115 Cal.App.2d 854, 860 [252 P.2d 973] (determination of bad faith joinder for venue purposes); *Carnation Co.* v. *El Rey Cheese Co.*, 88 Cal.App.2d 857, 858 [200 P.2d 19]; *Fuller* v. *Lindenbaum*, 29 Cal.App.2d 227, 230 [84 P.2d 155]; 3 Witkin, Cal. Procedure (1954) p. 2249.)

The question before us, therefore, is whether there is substantial evidence to support the trial court's determination that the action for specific performance was commenced by plaintiff for an improper purpose and not in good faith. Proper treatment of this question requires the definition of these terms and a consideration of the proof as related to the contentions of the parties.

*Definitions*

■ We note first that section 409.1, subdivision (b) requires a dual showing, "improper purpose" and "not in good faith." It is normally presumed that in setting forth two requirements, the Legislature intended each to have independent meaning. (Code Civ. Proc., § 1858; *Prager* v. *Isreal*, 15 Cal.2d 89, 93 [98 P.2d 729].) It is obvious, however, that the meaning of the terms "improper purpose" and "not in good faith" are overlapping and that the existence of one may tend to establish the other. (Compare the overlap in the elements of "lack of probable cause" and "malice" in *Albertson* v. *Raboff*, 46 Cal.2d 375, 382-383 [295 P.2d 405].) Moreover, we are persuaded by the legislative history of section 409.1, subdivision (b) that the

---

[5]The motion to expunge was based upon accompanying and supplemental declarations and "all the . . . records and files" in the case. The minute order granting the motion recites that the court's determination is based upon "all documents contained in the entire file."

term "improper purpose" was inserted by the Legislature to clarify and supplement the meaning of "not in good faith,"[6] and we have concluded that these terms must be defined and construed together in light of the purpose for which the statute was enacted. (*People* v. *Centr-O-Mart,* 34 Cal.2d 702, 704 [214 P.2d 378]; *City of Los Angeles* v. *Pacific Tel. & Tel. Co.,* 164 Cal.App.2d 253, 256 [330 P.2d 888].)

Much of the impetus for some sort of corrective legislation apparently stems from the decision in *Albertson* v. *Raboff, supra,* in which our Supreme Court held the recordation of a lis pendens to be absolutely privileged, thus precluding the remedy of an action for slander of title (46 Cal.2d at pp. 378-381). (See Comment, *Abuses of the California Lis Pendens: An Appeal for Legislative Remedy,* 39 So.Cal.L.Rev. 108, *supra.*) ■ In *Albertson,* in discussing the element of malice in an action for malicious prosecution of civil proceedings, the court noted: "It has been pointed out that the 'principal situations in which the civil proceedings are initiated for an improper purpose are those in which (1) the person initiating them does not believe that his claim may be held valid; (2) the proceedings are begun primarily because of hostility or ill will; (3) the proceedings are initiated solely for the purpose of depriving the person against whom they are initiated of a beneficial use of his property; (4) the proceedings are initiated for the purpose of forcing a settlement which has no relation to the merits of the claim.' (Rest., Torts, § 676, com. b; see also § 668, com. e.)" (*Albertson* v. *Raboff, supra,* 46 Cal.2d 375, 383.)

We are persuaded that these four situations are those that the Legislature intended primarily to reach by using the terms "improper purpose" and "not in good faith" and that "not in good faith" refers to situation numbered (1), while "improper purpose" refers to situations numbered (2), (3) and (4). We, therefore, adopt these definitions by illustration for purposes of

---

[6]This legislation was modeled generally upon sections 6514 and 6515, New York Civil Practice Law and Rules. (See *Howden-Goetzl* v. *Superior Court, supra,* 7 Cal. App.3d 135; Comment, *Abuses of the California Lis Pendens: An Appeal for Legislative Remedy,* 39 So.Cal.L.Rev. 108, *supra.*) The New York act provides for expungement on a finding of lack of good faith alone. Section 409.1 was introduced in the 1968 Legislature as Senate Bill 891. Originally, this bill provided for expungement on a showing of lack of good faith alone. By a letter dated June 5, 1968 from the California Real Estate Association it was brought to the attention of the Assembly Committee on Judiciary that various meanings could be ascribed to the term "good faith." (See *Gibson* v. *Corbett,* 87 Cal.App.2d Supp. 926, 931-932 [200 P.2d 216].) It was suggested that some definition of good faith be included in the bill. The legislative analysis prepared for that committee also raised the question of the meaning of good faith. On July 16, 1968, in the final hearing before the Assembly Committee on Judiciary, the bill was amended to insert the "improper purpose" requirement, apparently in response to the queries concerning the meaning of good faith.

section 409.1, subdivision (b).[7] It follows that to be successful in a motion for expungement on the grounds of "improper purpose" and "not in good faith," the moving party must show that the other party commenced or prosecuted his action without believing in its validity ("not in good faith") *and* the existence of one of the other enumerated situations ("improper purpose"). As noted above, however, logically the existence of the one may tend to prove the existence of the other.

### *Proof as Related to Contentions*

 Attached to and incorporated into the verified complaint, and constituting the basis of the alleged contract for the purchase and sale of the property, is a letter dated October 18, 1968, under the letterhead of plaintiff corporation signed by its President, addressed to Prudential Land & Investment Corp.,[8] with the salutation "Dear Mr. Goodman." It purports to be an offer to purchase the property, an apartment development, for $2,425,000 upon certain terms and conditions and provides, "[i]f these terms are acceptable, please sign below and we will enter into the escrow within 10 days."

At the bottom of the letter, in a space provided by the sender for acceptance, and entitled "ACCEPTED" appears the signature "James Goodman" and the date October 21, 1968. There also appear on the letter a number of hand printed changes and additions, generally favorable to the seller, accompanied by the handwritten initials "J.G." Neither the name nor the signature of Joseph J. Goodman appears anywhere on the letter.

The complaint names as defendants James Goodman and Joseph J. Goodman, individually and doing business as Parklane Gardens Apartment. It is alleged that plaintiff entered into the contract with "defendants" and that each of the defendants was the agent and employee of the remaining defendants. It is also alleged that on November 5, 1968, plaintiff and "defendants" caused escrow instructions to be drawn at the Union Bank for the purpose of carrying out the terms of the written agreement allegedly embodied in the letter. The complaint also contains allegations to the effect that the price named in the contract is the fair and reasonable value of the property; that the contract is as to the defendants fair, just and reasonable in all respects; that plaintiff has fully performed and is ready, willing and able to consummate the sale and purchase and to pay the purchase price.

---

[7] We do not mean to imply that there are no other situations which could come within the terms used by the Legislature, but we need not speculate in this case as to what they might be.

[8] This is the real estate brokerage business of James Goodman. Joseph Goodman is not affiliated with this business in any way.

It was apparently plaintiff's theory that the letter constituted a contract for.purchase and sale of the property or a sufficient written memorandum thereof or that, if the changes and additions made by James Goodman transformed the letter into a counteroffer, this counteroffer was accepted by plaintiff by proceeding to open the escrow[9] and that, in his activities relating to the transaction, James Goodman was acting not only for himself but as an agent for Joseph J. Goodman.

Plaintiff contends that the trial court's earlier denial of defendants' motions for summary judgment and judgment on the pleadings should have been treated by the trial court as conclusive of plaintiff's good faith and proper purpose. This contention is untenable. The question on the motion for judgment on the pleadings was whether the complaint stated a cause of action. The question presented by the motion for summary judgment was whether there was any triable issue of fact. Neither motion dealt with good faith or proper purpose.

Plaintiff also contends that its good faith in commencing the action, that is, its belief in the validity of its action for specific performance, is conclusively shown by the declaration of its attorney, Gerald A. Malat, filed in opposition to the motion to expunge. Mr. Malat declared that prior to the filing of the action he had discussed the transaction with representatives of the plaintiff; that he believed "that my clients had informed me of all pertinent and material facts regarding the transaction, within their knowledge"; that he reviewed the documents, evidence and facts relating to the transaction and that he had advised plaintiff that it had a meritorious claim against the defendants and counseled the filing of suit for specific performance. Plaintiff points out that in an action for malicious prosecution of civil proceedings, proof that the defendant honestly acted upon the advice of his lawyer after fully, fairly and completely stating to him all of the facts constitutes, a complete defense (*Citizens State Bank* v. *Hoffman,* 44 Cal. App.2d 854, 857 [113 P.2d 121] and cases there cited) and argues for a similar rule in respect to the problem of good faith under section 409.1.

Although it is obvious that such a showing should be given serious consideration by the trial court, we need not and do not decide in the case at bench whether such a showing conclusively establishes good faith for the purpose of section 409.1, subdivision (b), for when the facts are not fairly and fully disclosed to the attorney, the doctrine is inapplicable. (*Baker* v. *Gawthorne,* 82 Cal.App.2d 496, 500 [186 P.2d 981].) Where the evidence

---

[9]Additionally, there is a statement in the declaration of John Bell dated February 7, 1969, submitted by plaintiff in opposition to defendant's motion for summary judgment that, after the letter was sent to James Goodman and returned from him with the changes and additions, Mr. Bell telephoned Mr. Goodman and told him that the changes were acceptable and that escrow would be opened at the Union Bank.

is in conflict as to whether there was a full, fair and complete disclosure to the attorney of all of the facts of the case within the knowledge of the client, it is for the trial court to resolve such conflict. (*Albertson* v. *Raboff,* 185 Cal.App.2d 372, 386 [8 Cal.Rptr. 398].)

In the case at bench there is substantial proof that the facts were not accurately reported to the attorney. It appears that plaintiff's allegation of agency was based, at least in substantial part, upon statements of John Bell, plaintiff's employee, that he had had conversations and dealings with Joseph Goodman in negotiating the alleged contract. In truth, however, as appears from the subsequent deposition testimony of Mr. Bell, he never had any conversations or dealings with Joseph Goodman.

Defendants' contention, both in the trial court and here, that plaintiff commenced the action for an improper purpose and not in good faith was and is founded on a number of legal and factual propositions. The legal propositions are basically two. First, Joseph J. Goodman's approval and execution of escrow instructions was a condition precedent to the effectiveness of any agreement. (See *Helperin* v. *Guzzardi,* 108 Cal.App.2d 125, 128 [238 P.2d 141].) Second, except where facts exist showing part performance or estoppel (see Code Civ. Proc., § 1972; *Quan Shew Yung* v. *Woods,* 218 Cal.App.2d 506, 511-514 [32 Cal.Rptr. 453]; 1 Witkin, Summary of Cal. Law (7th ed.), pp. 117-123), an agreement for sale of real property must be in writing (Civ. Code, § 1624, subd. 4; Code Civ. Proc., § 1971), and, if a written contract is signed by an agent of the party to be charged, the agent's authority must also be in writing (Civ. Code, § 1624, subd. 4, *supra*).

Defendants urge that plaintiff knew full well of the existence of certain facts and the nonexistence of other facts bringing these legal propositions into play and that plaintiff, therefore, could not have believed in the validity of its suit for specific performance and, thus, defendants conclude, the action must have been commenced by plaintiff for an improper purpose and not in good faith.

The legal propositions espoused by defendants constitute correct statements of the law. We have concluded, however, that the proof does not support the application of the first legal proposition; that the second legal proposition would apply, in any event, only to Joseph J. Goodman and not to James Goodman; and that as to Joseph Goodman, plaintiff's knowledge of the existence or nonexistence of facts is insufficient to support a finding of plaintiff's bad faith in the absence of proof that plaintiff also had knowledge of the applicable legal principles which would make the existence or nonexistence of these facts meaningful.

The only competent proof which could possibly support the theory that Joseph Goodman's approval and signature of the escrow instructions was a condition precedent to the formation of a contract is the following statement in the declaration of James Goodman submitted in support of defendants' motion for summary judgment. ". . . [P]laintiff always knew and was told by me throughout the preliminary negotiations for the sale of the subject real property that the proposed escrow instructions would have to be examined and approved by Joseph J. Goodman as well as by myself, before a firm contract of sale of real property would be reached."

This statement of Mr. Goodman is inconsistent with several declarations of his attorney, Gary E. Gunderman, submitted in support of the motion to expunge, in which Mr. Gunderman demonstrates, by reference to the deposition testimony of John Bell, plaintiff's employee authorized to negotiate the sale, that Bell and plaintiff did not know of the existence of Joseph Goodman or his interest in the property until the escrow instructions were being prepared at which time the escrow officer ascertained from James Goodman the fact that the property was held in joint tenancy by James Goodman and Joseph J. Goodman.

Additionally, the declaration by James Goodman is inconsistent with the letter of October 18, 1968, itself. James Goodman is a licensed real estate broker. Plaintiff is a real estate syndicator. It must be inferred that both knew that to acquire or convey full title, all record owners must be parties to the transaction. The facts that the letter was directed to James Goodman alone; that Joseph Goodman was not mentioned by plaintiff originally; and that, despite the numerous changes and additions made by James Goodman, no mention was ever made of Joseph Goodman or the necessity of his approving or signing the escrow instructions, can support only one reasonable inference, that plaintiff was unaware of any interest of Joseph J. Goodman in the property until inquiry by the escrow officer.

Under these circumstances, we hold that the quoted assertions of James Goodman in his declaration do not constitute substantial evidence to support a finding that plaintiff commenced the action "not in good faith" on the theory that plaintiff knew that Joseph Goodman's approval and signature of the escrow instructions were a condition precedent. It is not the function of an appellate court to reweigh the evidence, but we cannot avoid our duty to determine whether the evidence constitutes substantial evidence. (*San Bernardino Valley Water Dev. Co.* v. *San Bernardino Valley Municipal Water Dist.*, 236 Cal.App.2d 238, 257 [45 Cal.Rptr. 793]; *Estate of Teed*, 112 Cal.App.2d 638, 644 [247 P.2d 54].) ▮ Substantial evidence means more than a mere scintilla; it means "such relevant evidence as a reasonable man might accept as adequate to support a conclusion." (*Estate*

*of Teed, supra.*) Improbable conclusions will not be sustained where testimony is at variance with the physical facts and the repugnance is material and self-evident. (*Estate of Teed, supra.*) "[I]f the word 'substantial' means anything at all, it clearly implies that such evidence must be of ponderable legal significance. Obviously the word cannot be deemed synonymous with 'any' evidence. It must be reasonable in nature, credible, and of solid value; it must actually be 'substantial' proof of the essentials which the law requires in a particular case." (*Estate of Teed, supra,* 112 Cal. App.2d 638, 644; *San Bernardino Valley Water Dev. Co.* v. *San Bernardino Valley Municipal Water Dist., supra,* 236 Cal.App.2d 238, 257; see also *Franco Western Oil Co.* v. *Fariss,* 259 Cal.App.2d 325, 329 [66 Cal.Rptr. 458]; *People* v. *Gibson,* 275 Cal.App.2d 198, 211 [79 Cal.Rptr. 693].)

 In arguing the applicability of their second legal proposition relating to the statute of frauds, defendants rely upon evidence found in the various declarations and documents in the file tending to prove that Joseph J. Goodman and James Goodman are father and son and the owners of the property in joint tenancy; that Joseph Goodman did not sign the letter of October 18, nor the escrow instructions,[10] nor any other docment relating to the transaction; that Joseph Goodman did not authorize James Goodman to act as his agent in the sale of the property either orally or in writing; and that plaintiff knew of no facts to support its allegations that James Goodman was the agent of Joseph Goodman nor which would support the doctrines of part performance or estoppel.

These factual propositions are substantially supported by the declarations and documents in the file. As previously noted, the allegation of agency in the complaint was apparently based, at least in substantial part, upon erroneous statements by John Bell to the effect that he had had conversations and dealings with Joseph Goodman, whereas in truth and fact he had not. In a subsequent declaration, Mr. Bell stated that, even after the existence and interest of Joseph Goodman was discovered, he continued to deal with James Goodman in revising the escrow instructions and the like and that James Goodman never indicated that he was unauthorized to represent his father. Even if this constituted a factual basis for the allegation of an agency, however, there is nothing in the record showing that plaintiff believed the authority of the agent was in writing or disclosing facts that would tend to prove part performance or estoppel.

Nevertheless, defendants' conclusion that this proof demonstrates that plaintiff could not have believed in the validity of its suit is not valid, for lacking is a link essential to the logic implicit in that conclusion. To

---

[10]The escrow instructions were never signed by James Goodman either.

judge the probable success of a lawsuit, it is not sufficient to know the facts alone. Without knowledge of the applicable law, the materiality of the facts cannot be judged. The law too must be known before any conclusion as to the outcome may be predicted. ▊ There is no evidence that plaintiff, itself, had knowledge of the complex legal principles relating to the statute of frauds, estoppel or part performance. On the contrary, plaintiff's attorney counseled the filing of suit for specific performance. It may be that his judgment was mistaken, particularly as to Joseph Goodman, but mistaken judgment is not equivalent to bad faith. (*Neel* v. *Barnard,* 24 Cal.2d 406, 418 [150 P.2d 177].)

▊ Even if there were not this fatal lack of evidence to support its application, the legal proposition relating to the statute of frauds would not be applicable to plaintiff's commencement of the specific performance action insofar as it was directed against James Goodman. He is a joint owner of the property, and he signed the letter of October 18, 1968. Defendants assert that "[t]here cannot be specific performance of an undivided interest in a joint tenancy." The law, however, is to the contrary. (*Ellis* v. *Mihelis,* 60 Cal.2d 206, 219 [32 Cal.Rptr. 415, 384 P.2d 7]; *Miller* v. *Dyer,* 20 Cal.2d 526, 529 [127 P.2d 901, 141 A.L.R. 1428].)

Attorney Gunderman, in one of his declarations in support of the motion to expunge, states that upon trial, the court made a finding that James Goodman did not sign the letter of October 18, 1968. In a counterdeclaration, Attorney Malat points out that this finding is equivocal because the trial court also found "that if James Goodman signed said exhibit, then the Court finds that all of the handwritten notations thereon are notations of James Goodman which constitute a counter-offer." More importantly, however, since an appeal was pending, this finding, and all other findings, did not constitute an adjudication of the facts set forth therein, nor even competent evidence of those facts. ▊ On the contrary, at this stage of the case, for purposes of determining whether the action was commenced for an improper purpose and not in good faith, the findings constitute nothing more than the opinions of the judge who tried the case and should not have been considered by the judge sitting in the law and motion department in the determination of the motion to expunge.[11] With the finding eliminated, there is no proof whatever that James Goodman did not sign the letter. On the contrary, in his declaration in support of the motion for summary judgment, he declares that he did sign it.

▊ The only other proof upon which defendants rely to establish plain-

---

[11]We do not determine whether or to what extent the *evidence* received at trial might be considered if the motion to expunge were heard by the judge who presided at the trial.

tiff's improper purpose and lack of good faith is found in a declaration by Ramona S. Shulz, an employee of Prudential Land & Investment Corp. under the supervision of James Goodman. She states that in January 1969 she received a telephone call from James Robert Soltz, plaintiff's vice president, who asked to speak to James Goodman. When she told Mr. Soltz that Mr. Goodman was unavailable, Mr. Soltz told her in a loud voice that he was at his attorney's office and that if Mr. Goodman did not call that office within 20 minutes, he would "take him for everything he was worth, and that he would file an action to tie up the property and force the sale of the property to United Professional Planning, Inc. [plaintiff]." Soltz then slammed down the phone without giving her time to respond.

These words of Mr. Soltz, directed at James Goodman as distinguished from Joseph Goodman, without more, do not reasonably support a conclusion that the action for specific performance was commenced for an improper purpose. Neither do they support a conclusion that it was commenced "not in good faith." In fact, they tend to demonstrate plaintiff's belief in the validity of its claim.

It is obvious from his loud voice and rude manner that Mr. Soltz was angry, and his statement appears to be nothing more than an angry assertion of the legal rights and remedies to which he felt plaintiff was entitled. The words "take him for everything he was worth" undoubtedly related to the claim for commissions and damages.[12] The assertion "that he would file an action to tie up the property and force the sale of the property" to plaintiff, constitutes an accurate description in lay terms of the effect of a suit for specific performance coupled with a lis pendens. ██ There is no impropriety in a party to a transaction threatening to enforce his legal rights and remedies and in pointing out to the other party the consequences thereof, so long as he believes in good faith that he is entitled to the rights and remedies asserted. (Cf. *McKay* v. *Retail Auto. S. L. Union No. 1067*, 16 Cal.2d 311, 321 [106 P.2d 373]; Rest., Torts, § 773; Rest. 2d Torts, § 46, com.g.)

██ With respect to the element of good faith, Mr. Soltz indicated that he was in his attorney's office and it is a reasonable inference that he had already discussed the matter with the attorney inasmuch as the complaint in the action was filed January 13, 1969, within days after his telephone call. The assertion by Mr. Soltz of plaintiff's alleged rights and remedies while still in the attorney's office, apparently after conferring with the attorney, tends to show that plaintiff honestly, even if mistakenly, relied upon the attorney's advice and believed in the validity of its claim.

---

[12]In the complaint; plaintiff claimed a commission of $60,000, special damages in the amount of $10,000 and loss of rental income at the rate of $32,900 per month.

We conclude that the present showing made by defendants is insufficient to support a finding that the action was commenced for an improper purpose and not in good faith.

Let a peremptory writ of mandate issue, commanding the respondent court to vacate its order of December 30, 1969, expunging plaintiff's notice of pendency of action recorded in Book 8844, pages 3 and 4 of the official records in the office of the County Recorder, County of Orange, and awarding defendants' attorney fees and costs. The alternative writ heretofore issued by this court is discharged and the restraining order of this court dated January 21, 1970, is dissolved.

Tamura, Acting P. J., and Kerrigan, J., concurred.

The petition of the real parties in interest for a hearing by the Supreme Court was denied August 26, 1970.