**BUSINESS FOODS SERVICE, INC., Plaintiff,**

v.

**FOOD CONCEPTS CORP. and Freshway Food Systems, Inc., Defendants.**

**No. 80 Civ. 0352.**

United States District Court, E. D. New York.

Feb. 17, 1982.

994

Richard B. Kelly, Fisher, Kelly, Wassner & Fallon, New York City, for plaintiff.

Clement Segal, Segal, Liling & Erlitz, New York City, for defendants.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

The parties to this antitrust action compete in the employee or commissary catering business in the States of New York and New Jersey. They supply their respective customers with daily deliveries of a wide variety of food, except for items such as milk, eggs and bread, and they do almost no on-premises cooking. In the overall cafeteria service industry, commissary catering lies somewhere between vending machines and extensive on-premises cooking.

Plaintiff has moved for summary judgment alleging that the defendant[1] utilizes a restrictive covenant that is both an unreasonable restraint of trade under Section 1 of the Sherman Act, 15 U.S.C. § 1, and a violation of Section 340 of the New York General Business Law. Since there are disputes as to the size of the geographic market and the scope of the relevant product market, the reasonableness of the alleged restraint cannot be presently assessed. Accordingly, summary judgment is denied.

### I. The Covenant.

The restrictive covenant[2] in question is atypical. It is a hybrid provision incorporating aspects of both a traditional employer-employee covenant not to compete and

an exclusive dealing arrangement. While the covenant restricts the employment opportunities of former employees of the defendant, the covenant itself appears in contracts entered into by the defendant and its customers, rather than in contracts between the defendant and its employees. If a competitor of the defendant hires a former employee of the defendant, the controversial covenant bars the defendant's customers from using the services of the defendant's competitor for one year after the termination of the service contract between that customer and the defendant.

### II. The Companies and their Employees.

When the lawsuit was commenced, the plaintiff corporation employed approximately twenty-eight individuals formerly employed by the defendant. Three of these individuals, Joseph Pacifico, Michael Cutsumbis, and Robert Botwinick, currently hold positions of major responsibility in the plaintiff corporation, specifically President, Vice President and Marketing Executive, respectively. It has been at least seven years since any of the three worked for the defendant.

The plaintiff alleges that the covenant goes beyond what is necessary to protect the defendant's business. It claims that the duration of the provision's restriction is potentially infinite. The plaintiff also notes that the employees involved were not privy to business secrets nor did they hold unique positions while employed by the defendant.

Furthermore, plaintiff claims that it has lost at least three customers directly as a result of the restrictive covenant in question. According to the plaintiff, these customers failed to make contracts with the plaintiff because they feared that the defendant would start litigation over the re-

1. Defendant Food Concepts Corp. acquired Freshway Food Systems, Inc. in May, 1978. Food Concepts thereafter assumed Freshway's contractual obligations. Some of these contracts contain either the restrictive covenant in question, or one similar thereto.

2. The covenant provides:

that any employees employed by (the defendant) Freshway during the tenure of our service and for one (1) year thereafter, will not knowingly be hired, leased, licensed or dealt with directly or indirectly by (the customer) individually, as a partner or as a corporation, in connection with any feeding or cafeteria service, nor for any other purpose.

strictive covenant. Indeed, since the commencement of this action, the defendant has in fact brought two lawsuits against several of its customers and in each case has joined the plaintiff in order to enforce the provision.

The defendant counters by asserting that the covenant is fair, reasonably warranted, and necessary for its protection. It asserts that the purpose of the restrictive covenant is to prevent the unfair use of information (e.g., business secrets) gleaned by employees while in the employ of the defendant. As an added fillip, the defendant notes that Robert Botwinick, its former employee, who now works for plaintiff, drafted the covenant while working for the defendant. If, therefore, the covenant violates the law, then, according to the defendant, the plaintiff should be barred from receiving equitable or monetary relief because of its unclean hands.

## III. *The Law.*

### A. *The Sherman Act*

■ Although the reasonableness of employee covenants not to compete is seldom raised in the federal courts, such restrictive covenants are "proper subjects for scrutiny under section 1 of the Sherman Act." *Newburger, Loeb & Co. v. Gross*, 563 F.2d 1057, 1082 (2d Cir. 1977). *See Schine Theatres v. United States*, 334 U.S. 110, 68 S.Ct. 947, 92 L.Ed. 1248 (1948); *Brunswick Corp. v. Sheridan*, 582 F.2d 175 (2d Cir. 1978); *Lektro-Vend Corp. v. Vendo Corp.*, 500 F.Supp. 332 (N.D.Ill.1980). So too, the reasonableness of an exclusive dealing contract may also be measured against Section 1.[3] *See Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 81 S.Ct. 623, 5 L.Ed.2d 580 (1961); *Standard Oil of Calif. and Standard Stations v. United States*, 337 U.S. 293, 69 S.Ct. 1051, 93 L.Ed. 1371 (1949).

■ While Section 1 applies both to covenants not to compete and to exclusive dealing arrangements, neither of these poten-

tially anticompetitive contractual provisions is per se illegal. The per see rule has not been extended to restrictive covenants primarily because of the limited experience courts have had in judging the competitive impact of such covenants within the rubric of Section 1 of the Sherman Act. *Bradford v. New York Times Co.*, 501 F.2d 51, 59–60 (2d Cir. 1974). *See also, United States v. Topco Assoc., Inc.*, 405 U.S. 596, 607–08, 92 S.Ct. 1126, 1133–34, 31 L.Ed.2d 515 (1972). Similarly, the benefits to sellers and buyers as well as to society from exclusive dealing arrangements must be balanced against possible anticompetitive effects. *See Standard Oil v. United States*, 337 U.S. at 306–08, 69 S.Ct. at 1058–59.

Thus, the legality of restrictive covenants and exclusive dealing contracts turns on the reasonableness of the provision in question. Consideration must, therefore, be directed to the nature of the business in which the restraint is used as well as the reasons for and the competitive impact of the restraint. *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. at 333–35, 81 S.Ct. at 631–32; *Northern Pacific Ry. Co. v. United States* 356 U.S. 1, 5, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958); *Newburger, Loeb & Co. v. Gross*, 563 F.2d at 1082–83; *Bradford v. N.Y. Times*, 501 F.2d at 59–60.

■ The rule of reason has recently been revitalized in Section 1 cases. *See Continental T.V., Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977); 2 Von Kalinowski, Antitrust Laws and Trade Regulation, § 6.02(3) (1981). In light of this resurgence, identifying the relevant market and isolating the effect of the challenged restraint on that market become essential since these are the dominant considerations in determining whether the restraint is reasonable. *National Society of Professional Engineers v. United States*, 435 U.S. 679, 688–92, 98 S.Ct. 1355, 1363–65, 55 L.Ed.2d 637 (1978); *Northern Pacific Ry. Co. v. United States*, 356 U.S. at 5, 78 S.Ct. at 518; *Lektro-Vend Corp. v. Vendo Corp.*,

---

**3.** The anticompetitive effects of exclusive dealing arrangements may also be challenged under Section 3 of the Clayton Act, 15 U.S.C. § 14, and Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45.

500 F.Supp. at 352; Von Kalinowski, *supra* § 6.02(3) at 6–61. Without market analysis, the competitive impact of the challenged restraint cannot be assessed. *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. at 327–28, 81 S.Ct. at 627–28; *Newburger, Loeb & Co. v. Gross*, 563 F.2d at 1082–83; *Lektro-Vend Corp. v. Vendo Corp.*, 500 F.Supp. at 349, 352.

◼ Although the parties concur that they compete in the commissary catering business in the Greater New York Metropolitan Area ("GNYMA"), and that the number of people employed by a customer determines the type of cafeteria service chosen, they disagree over the geographic and product markets. The plaintiff alleges that certain fixed costs make it economically unfeasible to serve customers with less than 150 to 800 employees. Affidavit of Geraldine Alpert, ¶ 19 at 8–9. Additionally, plaintiff contends that the total sales volume in the relevant geographic market is approximately forty million dollars. *Id.*

The defendant admits that it has contracts containing restrictive covenants with twenty-four customers for the 1980 fiscal year; and these customers have annual sales amounting to approximately four million dollars. The defendant's figures, however, suggest a broader view of both the product and geographic markets than the plaintiff's. As to the product market, the defendant contends that it serves companies with as few as seventy-five employees. Affidavit of Samuel Oolie, ¶ 6(a) at 2. As to the geographic market, the defendant argues that the total sales volume of the commissary catering industry in the GNYMA is from two to three billion dollars. *Id.* These figures stand in stark contrast to the relevant markets depicted by the plaintiff.

The plaintiff contends that the provision is overbroad and therefore unreasonable. It argues, for one thing, that the duration of the restriction is potentially infinite. Considering that the ban against competition lasts until one year after the termination of the contract between the defendant and its customer, the provision obviously restricts the employment opportunities of defendant's former employees long after their employment with the defendant has ended. While the plaintiff's argument has appeal, "the duration of the restriction is not the essential inquiry here . . . . Of primary importance is the 'market impact' of the alleged restraint and 'the challenged restraint's impact on competitive conditions.'" *Lektro-Vend Corp. v. Vendo Corp.*, 500 F.Supp. at 354–55, *quoting GTE Sylvania*, 433 U.S. at 50, 97 S.Ct. at 2557 (footnotes omitted). *See National Society of Professional Engineers v. United States*, 435 U.S. at 688, 98 S.Ct. at 1363. Since there is a dispute as to the boundaries of the relevant product and geographic markets, summary judgment under Section 1 of the Sherman Act is inappropriate.

### B. *The Donnelly Act.*

Although the Court has determined that summary judgment is inappropriate with respect to the Sherman Act claim, this does not end the inquiry. The plaintiff has also alleged a violation of New York law, specifically the Donnelly Act,[4] and this issue may be reached under the Court's pendent jurisdiction. *GEM Corrugated Box Corp. v. National Kraft Container Corp.*, 427 F.2d 499, 501 n.1 (2d Cir. 1970).

◼ Whether summary judgment should be granted on the Donnelly Act claim is problematic. The clear public policy of New York, as reflected in the Donnelly Act, is against restrictive covenants in the employment context. *Triple D&E Inc. v. Van Buren*, 72 Misc.2d 569, 339 N.Y.S.2d 821, *aff'd*, 42 A.D.2d 841, 346 N.Y.S.2d 737 (1973); *Karpinski v. Ingrasci*, 28 N.Y.2d 45, 320 N.Y.S.2d 1, 268 N.E.2d 751 (1971). To constitute a violation of the Donnelly Act, however, the provision must still be found to be unreasonable. *See, e.g., Karpinski v. Ingrasci*, 28 N.Y.2d at 49, 320 N.Y.S.2d at 4, 268 N.E.2d at 753.

Although the duration of a covenant not to compete may be a more important factor under New York law than under the Sher-

---

4. *See* Section 340 of the New York General Business Law.

man Act (*but see, Karpinski v. Ingrasci*, 28 N.Y.2d at 50, 320 N.Y.S.2d at 5, 268 N.E.2d at 753–54), the covenant's effect on competition and the business justification for the restraint must still be assessed.[5] *Horne v. Radiological Health Services, P.C.*, 83 Misc.2d 446, 371 N.Y.S.2d 948, 958, aff'd, 379 N.Y.S.2d 374 (1975). The harm to the general public cannot be assessed in a vacuum; it must be weighed on the scales of the relevant market. Moreover, it is significant that this case does not strictly involve a covenant not to compete. As already noted, the restrictive covenant is incorporated into contracts entered into by the defendant with its customers rather than contracts between the defendant and its employees. As stated by the plaintiff's own economist, "by restricting the choices of some customers, the restrictive covenant is equivalent to targeted exclusive dealing." Affidavit of Geraldine Alpert, ¶ 9, at 4.

 Even if the competitive impact of the restraint is not the crucial consideration in weighing the reasonableness of a restrictive covenant under New York law, it is clear that such an assessment is of primary importance when determining the legality of an exclusive dealing arrangement. *See, e.g., Big Top Stores, Inc. v. Ardsley Toy Shoppe*, 64 Misc.2d 894, 315 N.Y.S.2d 897, aff'd, 36 A.D.2d 582, 318 N.Y.S.2d 924 (1971). Considering that the restrictive covenant in this case is actually a hybrid of these two types of contractual arrangements, the dispute as to the relevant market again precludes the granting of the plaintiff's motion for summary judgment.

### C. Unclean Hands

As noted earlier, Robert Botwinick, who now works for the plaintiff, drafted the controversial covenant when he worked for the defendant. Defendant invokes the unclean hands doctrine.

While plaintiff asserts that this defense is not available in antitrust actions, it is clear that it may be barred from obtaining relief if the plaintiff bears equal responsibility for creating and implementing an illegal scheme. *Thi-Hawaii v. First Com. Finance Corp.*, 627 F.2d 991, 995 (9th Cir. 1980); *Wilson P. Abraham Const. Co. v. Texas Industries, Inc.*, 604 F.2d 897, 902 (5th Cir. 1979). To invoke this defense, however, the defendant must show that the plaintiff's participation in the illegal scheme was of the same degree as the defendant's and that the plaintiff's involvement was voluntary and in its own self-interest. *Wilson P. Abraham Const. Co. v. Texas Industries, Inc.*, 604 F.2d at 902; *Pearl Brewing Co. v. Joseph Schlitz Brewing Co.*, 415 F.Supp. 1122, 1129–30 (S.D.Tex. 1976); *Skouras Theatres Corp. v. Radio-Keith-Orpheum Corp.*, 58 F.R.D. 357, 359–60 (S.D.N.Y.1973).

The defendant cannot make such a showing here. Even if Mr. Botwinick was the primary architect of the restrictive covenant in question, his involvement preceded his employment with the plaintiff corporation by several years. Moreover, Mr. Botwinick is not a party to this action. Any involvement he may have had with respect to the covenant served his own interest and not that of the plaintiff corporation.

The reasonableness of the challenged restraint must be viewed in the light of its competitive impact on the relevant market. Because the parties disagree as to the product and geographic markets, these material issues must be resolved at trial. Plaintiff's motion for summary judgment is, therefore, denied.

SO ORDERED.

---

**5.** While the relative weight of the various factors that determine the reasonableness of a restrictive covenant may be different under state and federal antitrust law, it is clear that the mode of analysis and the applicable standards of the Donnelly Act are similar to and are governed by that developed under federal legislation. *Optivision, Inc. v. Syracuse Shopping Ctr. Ass'n*, 472 F.Supp. 665, 680–81 (N.D.N.Y. 1979); *Hsing Chow v. Union Central Life Ins. Co.*, 457 F.Supp. 1303, 1308 (E.D.N.Y.1978); *State of New York v. Mobil Oil Corp.*, 38 N.Y.2d 460, 464, 381 N.Y.S.2d 426, 428, 344 N.E.2d 357, 360 (1976).