**AYDIN CORPORATION, a Delaware corporation, Plaintiff-Appellant,**

v.

**LORAL CORPORATION, a New York corporation, and Conic Corporation, a Delaware corporation, Defendants-Appellees.**

No. 81–4592.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 16, 1982.

Decided July 12, 1983.

Michael L. Harrison, Harrison, Hearn & Berthold, San Jose, Cal., for plaintiff-appellant.

Ernest Leff, Hahn, Cazier & Leff, Los Angeles, Cal., for defendants-appellees.

Before WALLACE, KENNEDY, and NELSON, Circuit Judges.

WALLACE, Circuit Judge:

Aydin Corporation (Aydin) sued Loral Corporation (Loral) and Conic Corporation (Conic), a subsidiary of Loral, alleging violations of the federal antitrust laws. Aydin also alleges that they violated California statutory and common law. The district judge granted summary judgment for Loral and Conic on all counts. We affirm in part and reverse in part and remand.

I

Moyes served as head of the TerraCom Division of Conic (TerraCom) for several years prior to 1979. He also served as a director of Conic. On March 29, 1979, Moyes and directors of Loral and Conic signed a handwritten agreement terminating Moyes's employment. The agreement contained provisions resolving salary and stock obligations, as well as an agreement by Moyes not to "disrupt, damage, or impair" Conic's business.

On May 4, 1979, Moyes signed a more formal agreement with Loral and Conic which generally followed the provisions of the March 29th agreement. The May 4th agreement provided in part that Moyes would "preserve the confidentiality of all trade secrets and other confidential information" and that he would not:

now or in the future disrupt, damage, impair or interfere with the business of Conic Corporation, or its TerraCom Division whether by way of interfering with or raiding its employees, disrupting its relationships with customers, agents, representatives or vendors or otherwise[.

Moyes is] not however, restricted from being employed by or engaged in a competing business.

After termination of his employment with Conic, Moyes became employed by Aydin as head of Aydin's newly formed Microwave Division. During the next several months, ten TerraCom employees left and went to work for Moyes at Microwave.

Loral and Conic filed suit in California state court in October 1979 against Moyes and two of the Aydin employees who had been employed by TerraCom, alleging breach of the May 4th agreement and unfair competition. Loral and Conic filed another state court action against Aydin in Pennsylvania. The Pennsylvania suit was dismissed after Loral and Conic joined Aydin as a defendant in the California action.

Aydin filed this suit in federal court in April 1980, alleging that the May 4th agreement is an unlawful restraint of trade, that Loral and Conic's state court actions violate the antitrust laws, and that Loral and Conic are liable under California law for tortious interference with prospective business relations, for injury to a servant, and for unfair competition. Loral and Conic moved for summary judgment which was granted on all counts. We review the district court's order of summary judgment de novo. *State ex rel. Edwards v. Heimann,* 633 F.2d 886, 888 & n. 1 (9th Cir.1980).

II

We find no merit in Aydin's contention that the agreement prohibiting Moyes from disrupting, damaging, impairing or interfering with Conic's business is a per se violation of section 1 of the Sherman Act. 15 U.S.C. § 1. Section 1 prohibits an unreasonable contract, combination or conspiracy in restraint of trade. *See Standard Oil Co. v. United States,* 221 U.S. 1, 63–68, 31 S.Ct. 502, 517–19, 55 L.Ed. 619 (1911).

Aydin first alleges that the May 4th agreement constitutes a per se violation of section 1 because it results in a horizontal market division. To support this claim, Ay-

din must establish that Moyes competes at the same market level as Loral and Conic. *United States v. Topco Associates, Inc.,* 405 U.S. 596, 608, 92 S.Ct. 1126, 1133, 31 L.Ed.2d 515 (1972); *accord Krehl v. Baskin-Robbins Ice Cream Co.,* 664 F.2d 1348, 1354 (9th Cir.1982) ("The hallmark of a horizontal market allocation is collusion among competitors to confer upon each a monopoly in a specific area."); *National Tire Wholesale, Inc. v. Washington Post Co.,* 441 F.Supp. 81, 87 (D.D.C.1977) ("In order to establish a horizontal restraint, there must be a collaboration *among competitors.*") (emphasis in original), *aff'd without opinion,* 595 F.2d 888 (D.C.Cir.1979). Moyes is not a competitor of Loral and Conic in any significant measure and does not operate at the same level of the market structure. Further, the May 4th agreement expressly permits Moyes to be employed by or engage in a competing business. There is no evidence that Aydin or any other competitor of Loral and Conic participated in any way in the formation of the agreement. We express no opinion on whether, on another set of facts, a noninterference agreement between a company and a departing executive could ever amount to a horizontal market division.

Aydin next argues that even if the May 4th agreement does not result in a horizontal market division, the categories of per se antitrust violations should be expanded to include post-employment noninterference agreements. We have been reluctant to extend the per se categories of antitrust violations beyond price-fixing, market division, group boycotts, and tying arrangements. *See Ron Tonkin Gran Turismo, Inc. v. Fiat Distributors, Inc.,* 637 F.2d 1376, 1381–88 (9th Cir.), *cert. denied,* 454 U.S. 831, 102 S.Ct. 128, 70 L.Ed.2d 109 (1981); *DeVoto v. Pacific Fidelity Life Insurance Co.,* 618 F.2d 1340, 1344 (9th Cir.), *cert. denied,* 449 U.S. 869, 101 S.Ct. 206, 66 L.Ed.2d 89 (1980); *Gough v. Rossmoor Corp.,* 585 F.2d 381, 386–88 (9th Cir.1978), *cert. denied,* 440 U.S. 936, 99 S.Ct. 1280, 59 L.Ed.2d 494 (1979); *accord White Motor Co. v. United States,* 372 U.S. 253, 263, 83 S.Ct. 696, 702, 9 L.Ed.2d 738 (1963). As we stated in *Krehl v. Baskin-Robbins Ice Cream Co.:*

> The test for determining whether the rule of *per se* illegality should be extended to a business practice not heretofore afforded *per se* treatment is "whether the practice facially appears to be one that would always or almost always tend to restrict competition and decrease output . . . or instead one designed to 'increase economic efficiency and render markets more, rather than less, competitive.' "

664 F.2d at 1356, *quoting Broadcast Music, Inc. v. Columbia Broadcasting System, Inc.,* 441 U.S. 1, 19–20, 99 S.Ct. 1551, 1562–63, 60 L.Ed.2d 1 (1979); *accord Betaseed, Inc. v. U & I Inc.,* 681 F.2d 1203, 1220 (9th Cir.1982); *see also Broadcast Music, Inc. v. Columbia Broadcasting System, Inc.,* 441 U.S. at 8–10, 99 S.Ct. at 1556–58 (per se classification appropriate when practice is plainly anticompetitive and courts have considerable experience with the challenged business relationship); *Continental T.V., Inc. v. GTE Sylvania Inc.,* 433 U.S. 36, 49–50, 97 S.Ct. 2549, 2557–58, 53 L.Ed.2d 568 (1977) ("*Per se* rules of illegality are appropriate only when they relate to conduct that is manifestly anticompetitive.").

Employee covenants not to compete or interfere with the employer's business after the end of the employment relationship should not be tested under the per se rule. Such covenants often serve legitimate business concerns such as preserving trade secrets and protecting investments in personnel. *Newburger, Loeb & Co. v. Gross,* 563 F.2d 1057, 1082 (2d Cir.1977), *cert. denied,* 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 782 (1978). In addition, the courts have had inadequate experience with non-competition and noninterference covenants to warrant a per se categorization. *See Bradford v. New York Times Co.,* 501 F.2d 51, 59–60 (2d Cir.1974); *Business Foods Service, Inc. v. Food Concepts Corp.,* 533 F.Supp. 992, 995 (E.D.N.Y.1982).

Other circuits have likewise declined to apply a per se rule to noncompetition agreements. *See, e.g., Lektro-Vend Corp. v. Vendo Co.,* 660 F.2d 255, 264–65 (7th Cir.

1981), *cert. denied,* 455 U.S. 921, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982) (noncompetition covenants ancillary to sale of business); *Bradford v. New York Times Co.,* 501 F.2d at 59–60 (post-employment noncompetition agreement).

Without citing any authority, Aydin asserts that because most covenants ancillary to a valid agreement are tested by the rule of reason, all non-ancillary restraints must be tested under a per se standard. Even assuming that the restraints in this case may be deemed "non-ancillary," Aydin's analysis is confused. The proper function of ancillarity in antitrust analysis "is to remove [in some instances] the *per se* label from restraints otherwise falling within the category." Bork, *Ancillary Restraints and the Sherman Act,* 15 A.B.A. Antitrust Section Proceedings 211, 212 (1959). Whether a restraint that does not fall within a per se category is ancillary to a valid agreement is relevant only in the sense that ancillarity increases the probability that the restraint will be found reasonable. *See, e.g., Lektro-Vend Corp. v. Vendo Co.,* 660 F.2d at 264–65; *Sound Ship Building Corp. v. Bethlehem Steel Corp.,* 387 F.Supp. 252, 255 (D.N.J.1975), *aff'd,* 533 F.2d 96 (3d Cir.), *cert. denied,* 429 U.S. 860, 97 S.Ct. 161, 50 L.Ed.2d 137 (1976). *See generally Gough v. Rossmoor Corp.,* 585 F.2d at 388 (practices not conclusively presumed unreasonable must be proved unreasonable).

Aydin has not alleged conduct by Loral or Conic that fits within the market division category of per se restraints. We decline to expand the categories of per se violations and, therefore, affirm that part of the judgment of the district court rejecting the per se claim.

### III

The district court's entry of summary judgment for Loral and Conic on Aydin's claim that the May 4th agreement is an unreasonable restraint of trade prohibited by section 1 of the Sherman Act is more troublesome. At issue is whether the agreement had sufficient anticompetitive effect, an essential part of a section 1 claim under the rule of reason. *Kaplan v. Burroughs Corp.,* 611 F.2d 286, 290–91 (9th Cir.1979), *cert. denied,* 447 U.S. 924; 100 S.Ct. 3016, 65 L.Ed.2d 1116 (1980). The district court summarized Aydin's allegations of anticompetitive effect as encompassing conduct by Loral and Conic interfering with the public's ability to obtain optimum service in the microwave telecommunications industry and affecting the employee labor market by preventing Terra-Com employees from going to work for Moyes at Aydin. The district judge held that these allegations were insufficient to state a section 1 claim and that Aydin's "allegations of far-reaching anticompetitive effects in the relevant industry are simply not supported by the uncontroverted facts of this case."[1]

■ Although summary judgment is disfavored in antitrust cases in which motive and intent are important factors, *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *Calnetics Corp. v. Volkswagen of America, Inc.,* 532 F.2d 674, 683 (9th Cir.) (per curiam), *cert. denied,* 429 U.S. 940, 97 S.Ct. 355, 50 L.Ed.2d 309 (1976), its use is not prohibited and may save judicial resources. *See First National Bank v. Cities Service Co.,* 391 U.S. 253, 288–90, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968); *Hamro v. Shell Oil Co.,* 674 F.2d 784, 786 (9th Cir.1982) (California antitrust statutes); *Betaseed, Inc. v. U & I Inc.,* 681 F.2d at 1207; *Mutual Fund Investors, Inc. v. Putnam Management Co.,* 553 F.2d 620, 622, 624 (9th Cir.1977).

■ The plaintiff in an antitrust action judged under the rule of reason bears the burden of proving unreasonableness. *Betaseed, Inc. v. U & I Inc.,* 681 F.2d at 1228. Nevertheless, when the defendant brings a summary judgment motion, he bears the burden of demonstrating the absence of a genuine issue of material fact and that he is

---

1. Because matters outside the pleadings were presented to and not rejected by the district judge, we treat the ruling as one for summary judgment. Fed.R.Civ.P. 12(b).

entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *accord Mutual Fund Investors, Inc. v. Putnam Management Co.,* 553 F.2d at 624. The moving party is subject to a "particularly rigorous" burden in antitrust cases. *Id.; Javelin Corp. v. Uniroyal, Inc.,* 546 F.2d 276, 280 (9th Cir.1976), *cert. denied,* 431 U.S. 938, 97 S.Ct. 2651, 53 L.Ed.2d 256 (1977). In addition, a nonmoving plaintiff is entitled to have all reasonable inferences of fact drawn in his favor. *See, e.g., Sherman v. British Leyland Motors, Ltd.,* 601 F.2d 429, 438 (9th Cir.1979).

■ The amount of evidence necessary to raise a genuine issue of material fact is enough "to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First National Bank v. Cities Service Co.,* 391 U.S. at 288–89, 88 S.Ct. at 1592; *Mutual Fund Investors v. Putnam Management Co.,* 553 F.2d at 624. As we stated in *Sherman v. British Leyland Motors, Ltd.:*

> Substantial evidence to raise a triable issue is more than a mere scintilla, but the moving party has the burden of clearly demonstrating the absence of any genuine issue as to the existence of each material fact which under applicable principles of substantive law would be required to support a judgment in its favor.

601 F.2d at 439 (citations omitted).

■ To establish anticompetitive market effect, the plaintiff must prove that the defendant's actions caused a decrease in competition in the relevant market. Whether a decrease in competition occurred and whether it was caused by the defendant's conduct are factual matters which, if disputed, must be resolved by the trier of fact. *See First Beverages, Inc. v. Royal Crown Cola Co.,* 612 F.2d 1164, 1175–76 (9th Cir.), *cert. denied,* 447 U.S. 924, 100 S.Ct. 3016, 65 L.Ed.2d 1116 (1980); *Sherman v. British Leyland Motors, Ltd.,* 601 F.2d at 451; *Kaplan v. Burroughs Corp.,* 611 F.2d at 295–96 (affirming judgment *non obstante veredicto*); *DeVoto v. Pacific Fidelity Life Insurance Co.,* 516 F.2d 1, 6–7 (9th Cir.) (reversing grant of summary judgment on

section 1 claim), *cert. denied,* 423 U.S. 894, 96 S.Ct. 194, 46 L.Ed.2d 126 (1975); *see also Continental T.V., Inc. v. GTE Sylvania Inc.,* 433 U.S. at 49, 97 S.Ct. at 2557 ("Under [the rule of reason], the factfinder weighs all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition.").

Aydin did not allege in its complaint that the actions of Loral and Conic adversely affected competition in the microwave telecommunications industry. It alleged only that it was restrained from competing with Loral and Conic in a product market area alleged to extend to California, "other states and foreign countries." Regarding its employee labor market allegations, Aydin alleged only that it was "prevented . . . from seeking to employ skilled personnel who are desirable, logical candidates." We are at a loss to identify with any specificity the "field[s] of competition [with which] we are concerned and the dimensions of [those] field[s]." *Gough v. Rossmoor Corp.,* 585 F.2d at 389. Aydin has the burden to plead and prove that the actions of Loral and Conic harmed competition, not merely that the actions harmed Aydin in its capacity as a competitor. *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 488, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977) (antitrust laws exist to protect competition, not competitors); *Gough v. Rossmoor Corp.,* 585 F.2d at 386 ("To amount to an unreasonable restraint of trade the anticompetitive conduct must have an effect greater than its effect upon the plaintiff's business."). Aydin must demonstrate "a reduction . . . in competition flowing from the defendant's acts . . . ." *California Computer Products, Inc. v. International Business Machines Corp.,* 613 F.2d 727, 732 (9th Cir. 1979).

■ The issue of market effect was properly raised before the district judge, but Aydin failed to raise a genuine issue of material fact. In response to the motion for judgment, Aydin could not rest on its pleadings but was required to respond with affidavits or other evidence. Fed.R.Civ.P.

56(e). The only qualified response we have found on this issue was a portion of a deposition attached to Aydin's Brief in Opposition to Motion for Summary Judgment to the effect that the Chairman of the Board of Loral expressed concern that Aydin would build competitive microwave radios. This alone is insufficient. No other evidence was pointed out to us by Aydin. Viewing the evidence in the light most favorable to Aydin, a rational trier of fact could not find that Loral and Conic have caused a decrease in competition in the relevant product or labor markets.

### IV

The district court also rejected Aydin's Sherman section 1 theory that the state court actions against Aydin, Moyes, and other Aydin employees constituted an antitrust violation. The district court ruled for Loral and Conic on the basis that "plaintiff fail[ed] to provide convincing proof that defendants' state court action to enforce the May 4 agreement is anything less than a genuine attempt to prevent irreparable injury to TerraCom caused by Moyes' breach of the agreement."

■■■■ Bona fide efforts to obtain or influence legislative, executive, judicial or administrative action are immune from antitrust liability under the *Noerr-Pennington* doctrine. *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972); *United Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *accord Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.,* 674 F.2d 1252, 1262 (9th Cir. 1982) (*Clipper Exxpress*). The *Noerr-Pennington* doctrine protects the first amendment right to petition the government. *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. at 510, 92 S.Ct. at 611; *Clipper Exxpress,* 674 F.2d at 1262–63. If, however, the effort to obtain or influence government action is a sham, and is actually an attempt to interfere improperly with

the business relationships of a competitor, antitrust liability may be imposed. *California Motor Transport Co. v. Trucking Unlimited; Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. at 144, 81 S.Ct. at 533; *Clipper Exxpress,* 674 F.2d at 1263.

■■■ Multiple lawsuits are not a condition precedent to showing sham. Whether we consider the state court actions begun by Loral and Conic and subsequently combined as one or two actions is immaterial. We have held that a single action is sufficient to invoke the sham exception to the *Noerr-Pennington* doctrine. *Clipper Exxpress,* 674 F.2d at 1265–67 & 1265 n. 19.

■■■ Whether an effort to invoke the judicial process is a genuine effort to obtain redress, or instead is a mere sham, is a question of fact. *Clipper Exxpress,* 674 F.2d at 1264. Based on the record before us, we can draw no inference from the fact that the state court action was still pending when the district court entered judgment. Success or failure might be helpful as one indication of Loral and Conic's intent in bringing the action, *id.; Ernest W. Hahn, Inc. v. Codding,* 615 F.2d 830, 841 n. 13 (9th Cir.1980), but such an indication is not available before the state action is terminated.

■■■ This leaves us once more to determine if there is a genuine issue of fact material to whether the filing of the state actions was a sham. No evidence of sham, aside from the filings of the actions, was pointed out to us by Aydin. A rational trier of fact could not conclude that the state court actions were a sham and therefore not immune from antitrust liability.

### V

■■■ We next consider the district court's entry of summary judgment for Loral and Conic on the pendent claims. A district court may in its discretion reach pendent state claims even when the federal claims are dismissed before trial. *See Rosado v. Wyman,* 397 U.S. 397, 403–05, 90 S.Ct. 1207, 1213–14, 25 L.Ed.2d 442 (1970); *Ait-*

*ken v. IP & GCU-Employer Retirement Fund,* 604 F.2d 1261, 1271 (9th Cir.1979); *Sherman v. British Leyland Motors, Ltd.,* 601 F.2d at 454; *cf. United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). The district court did not abuse its discretion in retaining jurisdiction to decide the state claims, because the record shows that the court and the litigants had expended considerable time on the pendent claims before the antitrust claims were dismissed. *Arizona v. Cook Paint & Varnish Co.,* 541 F.2d 226, 227–28 (9th Cir.1976) (per curiam), *cert. denied,* 430 U.S. 915, 97 S.Ct. 1327, 51 L.Ed.2d 593 (1977). Aydin seeks relief on three California state-law theories: intentional interference with prospective business relations, injury to a servant affecting his ability to serve his master, and unfair competition.

■ The California Supreme Court set forth the standard for determining whether a plaintiff has stated a claim for intentional interference with prospective business relations in *Buckaloo v. Johnson,* 14 Cal.3d 815, 537 P.2d 865, 122 Cal.Rptr. 745 (1975). We are, of course, bound to follow an interpretation of state law by the highest state court. *West v. American Telephone & Telegraph Co.,* 311 U.S. 223, 236, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940); *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938).

In *Buckaloo v. Johnson,* the California Supreme Court held that a complaint alleging a "colorable economic relationship" between the plaintiff and a third party, with "the potential to develop into a full contractual relationship" was sufficient to withstand a demurrer. *Buckaloo v. Johnson,* 14 Cal.3d at 828–29, 537 P.2d at 873, 122 Cal. Rptr. at 753; *see also* 4 B. Witkin, *Summary of California Law,* Torts § 392 (8th ed. 1974) (tort of interference with prospective business advantage encompasses "intentional interference with business relations or advantages which are merely prospective and ordinarily not the subject of an existing contract"); Restatement (Second) of Torts § 766B comment c (1979) (the relations pro-

tected against intentional interference include interferences with the prospect of obtaining employment or employees). The California Supreme Court also stated that "[t]he protected area of activity is not a contractual relationship but an economic relationship with the potential to ripen into contract." *Buckaloo v. Johnson,* 14 Cal.3d at 830 n. 7, 537 P.2d at 873 n. 7, 122 Cal. Rptr. at 753 n. 7.

■ We conclude that Aydin has made a sufficient showing to overcome a summary judgment motion of a colorable economic relationship with the potential to ripen into a full contractual relationship with TerraCom personnel that it desires to hire. Although this count refers to prospective employees, the economic relation is sufficiently demonstrated by the existing employment agreements between Aydin and the ten ex-TerraCom employees, Moyes's previous relationship with the prospective employees, and his desire to hire as many TerraCom employees as possible. We ordinarily accept the district judge's analysis of the law of the state in which the judge sits unless clearly wrong. *E.g., Camacho v. Civil Service Commission,* 666 F.2d 1257, 1262 (9th Cir.1982); *S.A. Empresa De Viacao Aerea Rio Grandense v. Boeing Co.,* 641 F.2d 746, 752 (9th Cir.1981); *C.R. Fedrick, Inc. v. Borg-Warner Corp.,* 552 F.2d 852, 856 (9th Cir.1977). Here, the district judge was clearly wrong when she concluded that under California law Aydin must allege that it offered employment to TerraCom employees other than those actually hired, *see Olivet v. Frischling,* 104 Cal.App.3d 831, 839–40, 164 Cal.Rptr. 87, 91 (1980) (allegation that defendants' conduct resulted in refusal to renegotiate leases upheld against demurrer), and as a result improperly granted summary judgment on the intentional interference with prospective business relations claim. The district court did not reach the issue of the defense of justification and neither do we. We only hold that on the ground relied upon by the district court, summary judgment could not be granted on this count.

Aydin's counts for relief for injury to servants affecting ability to serve under California Civil Code section 49(c) (section 49(c)) and on a common law unfair competition theory present more difficult issues concerning the proper interpretation of California law. Both claims are based upon the actions taken by Loral and Conic in filing the state court actions. We have found no California precedents that resolve the legal issues which confront us. Therefore, we are unable to assume, from a review of available California law, the result the California Supreme Court would reach. *Scandinavian Airlines System v. United Aircraft Corp.,* 601 F.2d 425, 427 (9th Cir. 1979) (affirming partial summary judgment).

Aydin asserts that it has a claim under section 49(c) due to the harm caused to some of its employees as a result of Loral and Conic's state court actions. The district judge assumed without deciding that a claim could arise under section 49(c) for harm to an employer caused by a suit against an employee. The court ruled, however, that no claim was stated "[a]bsent some substantiation for [Aydin's] claim that the [state] suit is groundless and in bad faith." Whether a state court action is groundless and in bad faith is a factual issue.

The district court decided against Aydin on its common law unfair competition claim because it found that Aydin failed to demonstrate that Loral and Conic's state court actions were brought in bad faith.[2] As with the section 49(c) claim, the district court declined to determine whether a cause of action can be stated under California law for injury resulting from the filing of a lawsuit. We know of no authoritative California precedent resolving the issue.

Thus, both the section 49(c) and the unfair competition claims were resolved on the same issue. As we concluded in connection with Aydin's *Noerr-Pennington* claim,

*see* part IV, *supra,* whether the state actions were a sham or a genuine effort by Loral and Conic to obtain redress is a factual issue and, based upon the record before us, Aydin failed to raise an issue of material fact. The district judge was not clearly wrong in concluding that no cause of action under either section 49(c) or a common law unfair competition theory could be stated based upon litigation instituted in good faith. Thus, summary judgment was properly granted.

AFFIRMED IN PART; REVERSED IN PART AND REMANDED.

KENNEDY, Circuit Judge, concurring in part and dissenting in part:

Although I agree that the plaintiff's antitrust claim must be dismissed, in my view the case presents an issue different from the one discussed by the majority. I respectfully submit a separate concurrence on this aspect of the appeal. I also dissent from the remand of one of the plaintiff's state claims, for I would dismiss that part of the action as well.

The majority states: "Aydin must establish that Moyes competes at the same market level as Loral and Conic." It further states: "Moyes is not a competitor of Loral and Conic in any significant measure and does not operate at the same level of the market structure." The problem with these statements is that Aydin is the plaintiff, and Aydin does compete at the same market level as Conic. Moyes's agreement with Conic in fact serves to restrain Aydin as though Aydin itself were bound not to hire Conic employees. For analytic purposes, at least, the agreement thus operates as a horizontal division of the market among competitors.

The majority in effect holds that a chief executive officer and his company cannot agree to lessen competition, even when they contract to do so explicitly and in anticipation of the executive's leaving the compa-

---

2. The district court also rested its summary judgment ruling for Loral and Conic on the unfair competition claim on the basis that Aydin failed to demonstrate that the agreement with Moyes was unlawful. We do not address this aspect of the district court's ruling because we affirm the summary judgment on the unfair competition claim on another basis.

ny's employment. I know of no principle that immunizes such agreements from standard antitrust analysis.

This said, I would nevertheless grant summary judgment against Aydin. Even if we assume the complaint alleges a horizontal market division, it does not mean we must find it a per se Sherman Act violation, or we must find it unreasonable. *Broadcast Music, Inc. v. Columbia Broadcasting System, Inc.*, 441 U.S. 1, 99 S.Ct. 1551, 60 L.Ed.2d 1 (1979), dealt with an arrangement bearing all the earmarks of a horizontal restraint through price-fixing, yet the Court failed to condemn it as illegal. *See also United States v. Sealy, Inc.*, 388 U.S. 350, 357, 87 S.Ct. 1847, 1852, 18 L.Ed.2d 1238 (1967) (dictum). Finally, of course, *United States v. Addyston Pipe & Steel Co.*, 85 F. 271 (7th Cir.1898), points away from per se treatment, when an agreement is ancillary to the achievement of legitimate business concerns.

Although the purpose of the agreement in question was to diminish competition of Loral's employees, doing so was ancillary to the protection of Loral-Conic's trade secrets, namely its information as to the talent and potential of its most valuable technical employees. It furthers rather than stifles competition when an employer is enabled to keep such information confidential. The economic rationale for protecting such trade secrets is the same as that for protecting patents: only by creating property rights with respect to knowledge can we insure the efficient production of such knowledge. *See, e.g.,* F. Scherer, Industrial Market Structure and Economic Performance, ch. 16; R. Posner & F. Easterbrook, Cases and Materials on Antitrust Law, ch. 2, c. 3. In my view, the agreement is pro-competitive; it is not governed by per se tests, and it satisfies the rule of reason.

I dissent from remand of the pendent state claim on intentional interference with prospective business relations. The majority is correct in ruling that there is an insufficient showing of bad faith prosecution on the other state counts. In my view, this premise should lead us to affirm the dismissal of the interference count as well, rather than to remand to the district court, which will be required to dismiss it in any event.

Section 773 of the Restatement (Second) of Torts provides:

One who, by asserting in good faith a legally protected interest of his own or threatening in good faith to protect the interest by appropriate means, intentionally causes a third person not to perform an existing contract or enter into a prospective contractual relation with another *does not interfere* improperly with the other's relation if the actor believes that his interest may otherwise be impaired or destroyed by the performance of the contract or transaction. (Emphasis added.)

This proposition has been endorsed by California courts. *See, e.g., Imperial Ice Co. v. Rosier*, 18 Cal.2d 33, 36, 112 P.2d 631, 633 (1941); *Fletcher v. Western National Life Ins. Co.*, 10 Cal.App.3d 376, 89 Cal.Rptr. 78, 89 (1970); *United Professional Plan v. Superior Court*, 9 Cal.App.3d 377, 88 Cal.Rptr. 551, 562 (1970). Even if we view justification as an affirmative defense, our finding of good faith completely disposes of the issue.

I would affirm the district court in all respects.