**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000890
15-APR-2020
10:30 AM**

NO. CAAP-16-0000890 and CAAP-17-0000216

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

CAAP-16-0000890
PRUDENTIAL LOCATIONS, LLC, Plaintiff-Appellant, v.
LORNA GAGNON, PRESTIGE REALTY GROUP LIMITED LIABILITY COMPANY,
Defendants/Cross-Claim Defendants-Appellees, and RE/MAX LLC,
LORRAINE CLAWSON, Defendants/Cross-Claimants/Third-Party
Plaintiffs-Appellees, and KEVIN TENGAN, Third-Party
Defendant-Appellee, and DOES 1-15, Defendants

and

CAAP-17-0000216
PRUDENTIAL LOCATIONS, LLC, Plaintiff-Appellant, v.
LORNA GAGNON, PRESTIGE REALTY GROUP LIMITED LIABILITY COMPANY,
Defendants/Cross-Claim Defendants-Appellees, and RE/MAX LLC,
LORRAINE CLAWSON, Defendants/Cross-Claimants/Third-Party
Plaintiffs-Appellees, and KEVIN TENGAN, Third-Party
Defendant-Appellee, and DOES 1-15, Defendants

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 13-1-2328)

MEMORANDUM OPINION
(By: Ginoza, Chief Judge, Fujise and Hiraoka, JJ.)

**I.**

In this consolidated appeal,[1] Plaintiff-Appellant
Prudential Locations LLC (**Locations**), appeals from the following
orders entered by the First Circuit Court (**Circuit Court**):[2]

---

[1]     On May 2, 2017, this court consolidated CAAP-17-0000216 into CAAP-16-0000890.

[2]     The Honorable Karl K. Sakamoto presided.  The Honorable Virginia Lea Crandall entered an order addressing the renewed motion for attorneys' fees and costs and Final Judgment.

In CAAP-16-0000890,

(1)  the August 25, 2016 "Findings of Fact, Conclusions of Law, and Order [(**FFCLO**)] Denying [Locations's] Motion for Partial Summary Judgment [(**MPSJ**)] Against [Defendant-Appellee] Lorna Gagnon [(**Gagnon**)]";

(2)  the August 25, 2016 "[FFCLO] Granting Defendants [Appellees Gagnon] and Prestige Realty Group Limited Liability Company's [(**Prestige**)] Cross-Motion for Summary Judgment [(**XMSJ**)] on the First Amended Complaint of [Locations]";

(3)  the August 25, 2016 "[FFCLO] Granting [Defendants-Appellees RE/MAX LLC (**RE/MAX**)] and Lorraine Clawson's [(**Clawson**)] [XMSJ] Against [Locations]";

(4)  the November 1, 2016 "Order Denying [Locations's] Motion for Leave to File Second Amended Complaint" (**SAC**);

(5)  the November 7, 2016 "Order Granting Defendant [RE/MAX's] Motion for Protective Order as to the Deposition of Tim Burns [(**Burns**)] Noticed for September 14, 2016, Filed September 2, 2016";

(6)  the November 15, 2016 "Order Denying [Locations's] Motion to Compel";[3]

(7)  the December 9, 2016 Judgment;

(8)  the December 28, 2016 "Order Granting in Part and Denying in Part [Gagnon and Prestige's] Motion for Award of Attorney's Fees and Costs [(**MFC**)] Against [Locations]"; and

(9)  the December 28, 2016 "Order Denying [RE/MAX and Clawson's] Motion to Recover Attorneys' Fees and Costs Pursuant to [Hawaii Revised Statutes (**HRS**)] §§ 607-9, 607-14, and 607-14.5".

In CAAP-17-0000216, Locations appealed from

(1)  the March 3, 2017 "Order Granting in Part and Denying in Part [RE/MAX and Clawson's] Renewed Motion for Award of Attorneys' Fees and Costs Against [Locations]"; and

(2)  the March 22 2017 "Final Judgment".

---

[3]     The order also denied Locations's Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule 56(f) request for discovery continuance.

Locations contends that the Circuit Court erroneously determined that the Agreement Not to Compete (**Non-Compete Clause**) contained as Paragraph 3 of the Confidentiality and Non-Competition Agreement (**CNA)** signed by Gagnon was invalid and unenforceable; improperly denied Locations leave to file a second amended complaint; abused its discretion in denying discovery; and abused its discretion in awarding attorneys' fees to RE/MAX and Clawson.

## II.

## A.

Locations is a real estate brokerage firm in Hawaiʻi. Gagnon started working in real estate in 1989, as a sales person, in New Hampshire.  In 1999 she became a licensed real estate broker.  From 2003 to 2008, Gagnon owned and operated a RE/MAX franchise in New Hampshire.  Gagnon and her five children moved to Hawaiʻi from New Hampshire on July 1, 2008.

Locations offered and Gagnon accepted a "Sales Coach" position by letter dated August 6, 2008.  As a Sales Coach, Gagnon mentored and monitored Locations's agents' engagement with the company, discussed Locations's agents' plans for business and personal challenges and assisted Locations's agents' growth as real estate sales professionals by developing sales skills, role playing, and setting sales goals and ways to achieve those goals. On August 8, 2008, Gagnon signed the CNA[4] that is at issue here.

---

[4]    CONFIDENTIALITY AND NON-COMPETITION AGREEMENT

THIS CONFIDENTIALITY AND NON-COMPETITION AGREEMENT (the "Agreement"), is made and entered into as of the date set forth below, by and between Prudential Locations Real Estate LLC, a [Hawaiʻi] limited liability company, the employer described below ("Company") and the employee described below ("Employee").

1.    Recitals.

1.1 The primary business of the Company is to provide real estate brokerage and/or property management services in the State of [Hawaiʻi], hereinafter collectively referred to as the "Business".

1.2 The Business involves confidential and proprietary information and procedures and trade secrets of the Company and its subsidiaries, and such Information is a special, valuable and unique asset of the Business.

(continued...)

3

[4](...continued)

1.3 Employee is employed by the Company and will have access to such confidential and proprietary information, procedures and trade secrets of the Company.

1.4 Employee, in consideration of future employment, agrees to enter into this Agreement for the protection of the Business.

NOW, THEREFORE, the parties hereto, intending to be legally bound hereby, do promise and agree as follows:

2.    Confidentiality and Proprietary Rights. Employee acknowledges and agrees that he or she will have access to confidential and proprietary information and procedures and trade secrets of the Company and its subsidiaries, and that such information is a special, valuable and unique asset of the business of the Company and its subsidiaries.  Employee further acknowledges and agrees that such confidential and proprietary Information and procedures and trade secrets belonging exclusively to the Company includes, without limitation, the following: (i) any information which is not generally known to the public which was or is used, developed, made or obtained by the Company or any of its subsidiaries or which otherwise came into possession of the Company or any of its subsidiaries or which relates to the Company or any of its subsidiaries, (ii) all memoranda, files, books, papers, letters, drawings, documents, formulas, specifications, investigations, and other processes data, and all copies thereof and therefrom, in any way relating to the Company or any of its subsidiaries, whether used, developed, made or obtained by the Company or any of its subsidiaries or which otherwise came into the possession of the Company or any of its subsidiaries; (iii) all information related to clients and customers, including without limitation, clients and customer lists, the identities of existing, past and prospective clients and customers, prices charged or proposed to be charged to any existing, past or prospective client or customer, client or customer contacts, special customer requirements, and all related information; (iv) sales and marketing strategies, plans, materials and techniques, research and development information, trade secrets and other know-how or other information pertaining to the financial condition, business, research and development or prospects of the Company or any of its subsidiaries; and (v) patterns, devices, compilations of information, copyrightable material and technical information, if any, in any way relating to the Company or any of its subsidiaries (hereinafter collectively referred to as the "Confidential Information").

2.1    Restriction on Use of Confidential Information.  Employee agrees that, except in performance of duties under an employment arrangement with the Company, Employee **shall not** directly or indirectly, at any time or place, during his or her employment and at anytime after Employee ceases to be an employee for any reason whatsoever, use for his or her own benefit or for the benefit of any third party, or disclose to any third party, any Confidential Information acquired by reason of his or her status as an employee or former employee of the Company, including without limitation, Confidential Information belonging or relating to the Company or Its subsidiaries,

(continued...)

4

[4](...continued)
affiliates and customers. Employee agrees that the duration, geographic area and scope of this provision is reasonably necessary for the protection of the Company and does not and will not impose undue hardship on Employee.

    3.   <u>Agreement Not To Compete</u>. Employee agrees that Employee **shall not**, directly or indirectly, within the State of [Hawaiʻi] where the Company conducts or has conducted business, during his or her employment and for a period of one (1) year after Employee ceases to be an employee for any reason whatsoever, (i) represent, furnish consulting services to, be employed by, or engage or participate in the same or similar business or businesses conducted by the Company, including without limitation, the Business, or perform services for third parties which are generally comparable or competitive with those performed by the Company with respect to the Business ("Comparable Services"), (ii) own or operate, or become proprietor, partner, principal, agent, consultant, employee, trustee, director, officer, stockholder or Investor, of any person, firm or business which engages or participates in the same or similar business or businesses conducted by the Company, including without limitation, the Business, or which performs Comparable Services, (iii) engage in any activity or conduct adverse to the Business or interests of the Company, or (iv) induce or encourage any other persons employed or affiliated with the Company to terminate their relationship with the Company. <u>Notwithstanding the foregoing, Company agrees that the Employee may, independently or as an employee or independent contractor of an existing real estate brokerage company act as a real estate salesperson or broker/salesperson, and such conduct shall not constitute a violation of this paragraph (the "Permitted Activities"). Permitted Activities however shall not include (i) Employee's formation of a real estate brokerage company with other real estate salesperson(s), (ii) Employee's solicitation of other persons employed or affiliated with the Company.</u>

    4.   <u>Remedies of Company</u>. Employee and Company hereby acknowledge and agree that the duration, scope and geographic area applicable to the restrictions set forth in this Agreement are fair, reasonable and necessary, and represent the area in which the goodwill associated with the conduct of the Business has been or will be developed by the Company. It is the intent of the parties that the provisions of this Agreement shall be enforced to the fullest extent permissible under the laws and public policies of the State of [Hawaiʻi]. Employee and Company agree that (i} a monetary remedy for a breach of this Agreement will be inadequate, and will be impracticable and extremely difficult to prove, and further agrees that such a breach would cause the Company irreparable harm, and that the Company shall be entitled to temporary and permanent injunctive relief without the necessity of proving actual damages, and (ii) the Company shall be entitled to such injunctive relief, including temporary restraining orders, preliminary injunctions and permanent injunctions, without the necessity of posting bond or other undertaking in connection therewith.

(Emphasis in original).

On June 28, 2013, Gagnon submitted a resignation letter to Locations's Executive Vice President of Sales, Scott Higashi (**Higashi**). Gagnon's letter stated that her last day of employment would be July 3, 2013. According to Gagnon, she discussed her resignation with Higashi, who asked her to remain with Locations until August 15, 2013.

At some point in time, Gagnon and Clawson began discussing Gagnon opening a new RE/MAX franchise in Hawaiʻi. On July 3, 2013, Gagnon formally acknowledged receipt of a RE/MAX franchise disclosure document as a prospective RE/MAX franchisee.

On July 15, 2013, Gagnon and Kevin Tengan, who was the manager of Locations's technology department, entered into a RE/MAX franchise partnership agreement. On July 18, 2013, Gagnon, as registered agent and organizer, submitted Prestige's articles of organization to the Hawaiʻi Department of Commerce and Consumer Affairs (**DCCA**). On July 22, 2013, Gagnon, as a managing member of Prestige, submitted to DCCA an Application for Registration of Trade Name. Several days later, Tengan purchased several domain names for Prestige to develop websites for Oahu and Maui. On August 8, 2013, Gagnon and Tengan executed a RE/MAX franchise agreement.

On August 13, 2013, Gagnon informed Higashi that Sherri Au (**Au**), a Locations agent who had been one of Gagnon's mentees, was terminating her agency relationship with Locations. Gagnon's last day at Locations was August 15, 2013. On August 26, 2013, the Real Estate Commission of DCCA issued to Prestige a Notice of Licensure, authorizing "RE/MAX Prestige" to act as a real estate broker, effective August 15, 2013. Au was listed as the Principal Broker for Prestige in the application for licensure submitted on August 15, 2013. On September 1, 2013, Prestige opened its sole office in Hawaiʻi Kai.

**B.**

On August 23, 2013, Locations filed a complaint against Gagnon and Prestige, alleging breach of the CNA and tortious

interference with contract by forming Prestige and encouraging others to leave Locations. On May 23, 2014, Locations filed its First Amended Complaint (**FAC**), which added tortious interference with contract claims against RE/MAX and Clawson.

On August 7, 2015, Locations filed a motion for leave to file the SAC to add an unfair method of competition claim against RE/MAX. On October 22, 2015, RE/MAX and Clawson filed their answer and cross-claim against Gagnon and Prestige.[5]

Following discovery, the parties filed MPSJs: on December 22, 2014, Locations filed an MPSJ against RE/MAX and Clawson for a determination that they tortiously interfered with Gagnon and Locations's CNA;[6] on November 17, 2015, Locations filed an MPSJ against Gagnon seeking enforcement of the Non-Compete Clause, a finding that she was in breach of the Non-Compete Clause, and damages; on July 11, 2016, Gagnon and Prestige filed their XMSJ for a determination that the Non-Compete Clause was invalid and unreasonable and that the Non-Solicitation Clause did not apply to agents or independent contractors; and on July 15, 2016, RE/MAX and Clawson filed a XMSJ for a determination that there was no tortious interference with Gagnon's CNA. At the hearing on August 3, 2016, the Circuit Court took these matters under advisement.

On August 23, 2016, Locations filed a notice of taking deposition upon oral examination of Burns (to whom Clawson reported) for September 14, 2016, in Merrillville, Indiana.

On August 25, 2016, the Circuit Court issued the FFCLOs. The court ruled that the Non-Compete Clause was illegal and unenforceable as a matter of law, and that the Non-Solicitation Clause was an illegal restraint on trade or commerce.[7] Locations then filed a motion to compel RE/MAX and

---

[5]     RE/MAX and Clawson also filed a third-party complaint against Tengan, which was later dismissed by stipulation.

[6]     This motion was denied on March 2, 2015 but has not been included in this appeal.

[7]     On September 8, 2016, seeking to vacate the FFCLOs, Locations filed a petition for writ of mandamus against Judge Sakamoto, which the Hawaiʻi Supreme Court denied.

Clawson to produce discovery and to produce for deposition Burns, Garrett Matthews (a RE/MAX consultant), and HRCP Rule 30(b)(6)[8] designated witness(es).

On September 2, 2016, RE/MAX filed a motion for protective order, arguing that after the Circuit Court's ruling on the MPSJs and XMSJs, no claim remained against RE/MAX and Locations's motion for leave to file a SAC to add an unfair method of competition claim against RE/MAX had not been decided, making discovery on this claim moot.

On November 1, 2016, the Circuit Court denied Plaintiff's motion for leave to file the SAC, explaining that the proposed SAC sought to reassert and relitigate claims identical to those asserted in the FAC, all of which had been dispositively adjudicated through the FFCLOs and, as a result, no claims or parties remained. As Locations's proposed claim for unfair method of competition against RE/MAX was predicated on the validity of the CNA between Locations and Gagnon and having already determined that the Non-Compete Clause was not reasonable and invalid and unenforceable, the Circuit Court ruled that any attempt to add an unfair method of competition claim would be futile and thus, moot.

On November 7, 2016, the Circuit Court granted RE/MAX's motion for protective order and consequently denied Locations's motion to compel.

On November 18, 2016, Gagnon and Prestige filed a MFC. RE/MAX and Clawson filed a MFC pursuant to HRS §§ 607-9, 607-14 and 607-14.5.[9]

---

[8]     HRCP Rule 30(b)(6) covers subpoenas to persons designated by an organization to testify as to matters known or reasonably available to the organization.

[9]     HRS § 607-9 provides for taxable costs; HRS § 607-14 provides for attorneys' fees to the prevailing party in all actions (1) in the nature of assumpsit, (2) on a promissory note, and (3) contract in writing, not to exceed 25 percent of the judgment; HRS § 607-14.5 provides for attorneys' fees and costs to be paid by either party upon the court's specific finding that all or a portion of the party's claim or defense was frivolous.

Judgment in favor of Defendants Gagnon, Prestige, RE/MAX, and Clawson and against Locations on all claims was entered on December 9, 2016.

On December 28, 2016, the Circuit Court denied without prejudice RE/MAX and Clawson's MFC.  The court agreed that they were entitled to reasonable attorneys' fees pursuant to HRS § 607-14 because the tortious interference claims asserted against them were derived from the breach of contract action against Gagnon and Prestige.  However, the court found the requested amount was excessive and unreasonable, and there was insufficient evidence to establish that Locations's claims were frivolous under HRS § 607-14.5.  The Circuit Court granted in part and denied in part Gagnon and Prestige's MFC, due to, *inter alia*, insufficient evidence to establish that Locations's claims were frivolous under HRS § 607-14.5.

Locations filed a timely notice of appeal from the Judgment on December 29, 2016.

On January 9, 2017, RE/MAX and Clawson filed a renewed MFC.  A Final Judgment was entered on March 22, 2017, which incorporated the December 9, 2016 Judgment, the December 28, 2016 orders on fees and costs, and added a March 3, 2017 order granting in part and denying in part RE/MAX and Clawson's renewed request for fees and costs.

On March 23, 2017, Locations filed a notice of appeal from the March 22, 2017 Final Judgment.

**III**.

Locations asserts that the Circuit Court:

(A) erred in granting summary judgment against Locations in ruling that the Non-Compete Clause: (1) is greater than required for the protection of Locations and that Locations lacks a legitimate interest in enforcing it; (2) imposes an undue hardship on Gagnon; (3) the harm to the public is outweighed by the benefit; and (4) the clause did not fit any of the exceptions listed in HRS §480-4(c) (Supp. 2019)[10] and is an illegal restraint on trade or commerce;

---

[10]    HRS §480-4(c) is set forth infra p. 10 n.11.

9

(B) erred in determining that all non-solicitation clauses are *per se* against public policy and illegal under HRS § 480-4;

(C) abused its discretion: (1) in delaying decision on Locations's motion for leave to file SAC over fourteen months and then denying it after ruling against Locations on summary judgment; (2) refusing to consider Locations's motions to compel; (3) instructing the parties that it would rule on the validity of the Non-Compete Clause on summary judgment prior to allowing discovery of RE/MAX; (4) granting RE/MAX's motion for protective order; (5) considering RE/MAX's untimely renewed MFC; (6) ruling that RE/MAX, who is the target of a tort claim, is entitled to attorney's fees under HRS § 607-14; (7) awarding uncapped attorney's fees to Defendants; and (8) denying Locations's HRCP Rule 56(f) request.

**IV.**

**A.    The Motions for Summary Judgment to Determine the Validity and Enforceability of the Non-Compete Clause**

**1.**

In this case, the parties' motions for summary judgment turned on a single, legal determination: Whether the Non-Compete Clause was reasonable and enforceable, or whether it was an illegal restraint on trade, prohibited by HRS § 480-4.[11]

---

[11]    HRS § 480-4(a) through (c) provides:

> **§480-4 Combinations in restraint of trade, price-fixing and limitation of production prohibited.** (a) Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce in the State, or in any section of this State is illegal.
>
> (b) Without limiting the generality of subsection (a), no person, exclusive of members of a single business entity consisting of a sole proprietorship, partnership, trust, or corporation, shall agree, combine, or conspire with any other person or persons, or enter into, become a member of, or participate in, any understanding, arrangement, pool, or trust, to do, directly or indirectly, any of the following acts, in the State or any section of the State:
>
> (1)    Fix, control, or maintain the price of any commodity;
>
> (2)    Limit, control, or discontinue, the production,

(continued...)

On review of a summary judgment proceeding, the standard to be applied by this court is identical to that employed by the trial court. Wright & Miller, <u>Federal Practice and Procedure</u>: Civil § 2716. This means that "the inferences to be drawn from the underlying facts alleged in the materials (such as depositions, answers to interrogatories, admissions and affidavits) considered by the court in making its determination must be viewed in the light most favorable to the party opposing the motion." <u>Gum v. Nakamura</u>, 57 Haw. 39, 549 P.2d 471 (1976); <u>Aku v. Lewis</u>, 52 Haw. 366, 477 P.2d 162 (1970); <u>Abraham v. Onorato Garages</u>, 50 Haw. 628, 446 P.2d 821 (1968). Further, in

---

[11](...continued)

manufacture, or sale of any commodity for the purpose or with the result of fixing, controlling or maintaining its price;

(3) Fix, control, or maintain, any standard of quality of any commodity for the purpose or with the result of fixing, controlling, or maintaining its price;

(4) Refuse to deal with any other person or persons for the purpose of effecting any of the acts described in paragraphs (1) to (3).

(c) Notwithstanding subsection (b) and without limiting the application of subsection (a), it shall be lawful for a person to enter into any of the following restrictive covenants or agreements ancillary to a legitimate purpose not violative of this chapter, unless the effect thereof may be substantially to lessen competition or to tend to create a monopoly in any line of commerce in any section of the State:

(1) A covenant or agreement by the transferor of a business not to compete within a reasonable area and within a reasonable period of time in connection with the sale of the business;

(2) A covenant or agreement between partners not to compete with the partnership within a reasonable area and for a reasonable period of time upon the withdrawal of a partner from the partnership;

(3) A covenant or agreement of the lessee to be restricted in the use of the leased premises to certain business or agricultural uses, or covenant or agreement of the lessee to be restricted in the use of the leased premises to certain business uses and of the lessor to be restricted in the use of premises reasonably proximate to any such leased premises to certain business uses;

(4) A covenant or agreement by an employee or agent not to use the trade secrets of the employer or principal in competition with the employee's or agent's employer or principal, during the term of the agency or thereafter, or after the termination of employment, within such time as may be reasonably necessary for the protection of the employer or principal, without imposing undue hardship on the employee or agent.

considering the validity of the granting of summary judgment under H.R.C.P. Rule 56(c), the appellate court must determine whether any genuine issue as to a material fact was raised and, if not raised, whether the moving party was entitled to judgment as a matter of law. Abrahm v. Onorato Garages, supra.

Technicolor, Inc. v. Traeger, 57 Haw. 113, 118-19, 551 P.2d 163, 168 (1976) (ellipsis omitted).

The Non-Compete Clause was part of the CNA drafted by Locations and signed by Gagnon, as a condition of her employment with Locations. As quoted, *supra* at n.4, the Non-Compete Clause forbade Gagnon, for one year after her employment with Locations ceased, in the State of Hawaiʻi, from performing the Business[12] or "Comparable Services"[13] of Locations for third parties; having virtually any relationship with a "person, firm or business" engaged in the same or similar Business or Comparable Services of Locations; engaging in any conduct adverse to Locations's interests; or inducing or encouraging anyone employed or affiliated with Locations to terminate their relationship with Locations. However, the Non-Compete Clause explicitly allowed Gagnon to act as a real estate salesperson or broker/salesperson for an existing company, so long as she did not form a brokerage company with other real estate salespersons or solicit other persons from Locations. Id.

As a general rule, and as pertinent here, any contract that is in restraint of trade or commerce, is illegal. HRS § 480-4(a). HRS § 480-4 is a remedial statute, Cieri v. Leticia Query Realty, Inc., 80 Hawaiʻi 54, 68, 905 P.2d 29, 43 (1995), and as such "should be liberally construed to suppress the perceived evil and advance the enacted remedy." Kalima v. State, 111 Hawaiʻi 84, 100, 137 P.3d 990, 1006 (2006) (internal quotation marks omitted). However, HRS 480-4(c) contains

---

[12] Defined in the CNA as "real estate brokerage and/or property management services."

[13] Defined in the Non-Compete Clause as services "which are generally comparable or competitive with those performed by [Locations] with respect to the Business."

exceptions to the general rule.  See n.11 *supra*.  "Exceptions or
exclusions to a remedial law are narrowly construed."  73 Am.
Jur. 2d Statutes § 176.

In Technicolor, relying primarily on the legislative
history of HRS § 480-4,[14] the Hawaiʻi Supreme Court concluded that
the exceptions listed in HRS § 480-4(c) were not exclusive.
Rather, restrictive covenants should be evaluated, "in much the
same way that federal courts would, in Section 1[] Sherman Act
Cases,[15] analyze such covenants."  Technicolor, 57 Haw. at 121-
22, 551 P.2d at 170.  Thus, the Technicolor court adopted federal
case analysis which applied a "rule of reason" test to determine
the validity of restrictive covenants, which in turn considered
three factors:

> Generally courts will find a restrictive covenant "not
> reasonable", and therefore invalid, if:
>
> > (i) it is greater than required for the
> > protection of the person for whose benefit it is
> > imposed; (ii) it imposes undue hardship on the
> > person restricted; **or** (iii) its benefit to the
> > covenantee is outweighed by injury to the
> > public. . . .
>
> > This "reasonableness analysis" is done by the court,
> as a matter of law[.]

Technicolor, 57 Haw. at 122, 551 P.2d at 170 (citation omitted,
emphasis added).

**2.**

Taking these concepts in hand, we review the Non-
Compete Clause at issue here.

The Non-Compete Clause prevents Gagnon from engaging in
the types of business or services as that of Locations for third
parties, for the duration of her employment through one year

---

[14]     See Conf Comm. Report No. 16 on H.B. 27, reprinted in 1961 House
Journal at 1067, 1075 (advising that comparable provisions of federal anti-
trust laws would guide the interpretation and application in light of the
economic and business conditions in this State).

[15]     The Sherman Antitrust Act provides that "[e]very contract,
combination in the form of trust or otherwise, or conspiracy, in restraint of
trade or commerce among the several States, or with foreign nations, is
declared to be illegal[.]"  Ch. 647, 26 Stat. 209 (1890), as amended, 15
U.S.C. § 1 (1970).

after leaving Locations, in the State of Hawai'i. Such an agreement not to compete is generally considered a restraint on trade which is prohibited by HRS § 480-4 unless it qualifies for an exception under HRS § 480(c), or it is considered "reasonable" as determined by the court. See Technicolor, 57 Haw. at 120-22, 551 P.2d at 169-70 (the "'reasonableness analysis' is done by the court, as a matter of law.").

We conclude that the Non-Complete Clause is reasonable. First, it is not "greater than required for the protection" of Locations. Its geographical scope is limited to the State of Hawai'i, and then only where Locations conducts, or has conducted, business. Its one-year duration is no longer than other such covenants approved by Hawai'i courts. See 7's Enters., Inc. v. Del Rosario, 111 Hawai'i 484, 486, 143 P.3d 23, 25 (2006) (three years); Technicolor, 57 Haw. at 115, 551 P.2d at 166 (three years); see also Merrill Lynch, Pierce, Fenner & Smith v. McClafferty, 287 F. Supp. 2d 1244 (D. Haw. 2003) (one-year restriction was valid under Hawai'i law); UARCO Inc. v. Lam, 18 F. Supp. 2d 1116 (D. Haw. 1998) (two-year restriction was valid under Hawai'i law). Most importantly, the breadth of the services prohibited, which initially appears co-terminus with the services provided by Locations, was limited as it did not prevent Gagnon from acting as a real estate salesperson or broker/salesperson in Hawai'i, independently or as an employee or independent contractor for an existing real estate firm.

The Non-Compete Clause does not impose undue hardship. Gagnon was not prevented from earning a living -- as an independent broker/salesperson or an independent contractor for an established real estate firm -- from real estate sales or brokerage, beginning immediately after leaving Locations, so long as she did not solicit others affiliated with Locations.

Finally, the benefit to Locations does not appear to be outweighed by injury to the public. The terms of the Non-Compete Clause do not deprive the public of Gagnon's services and expertise.

14

## B.    The Non-Solicitation Clause Is Valid

Locations argues that the Circuit Court erred in ruling the "Non-Solicitation Clause" contained within the Non-Compete Clause was illegal.

As quoted above, *supra* at n.4, Gagnon was prohibited, without exception, from inducing or encouraging persons employed or affiliated with Locations to terminate their association with Locations.  Non-solicitation agreements can be lawful even under statutes which forbid non-compete covenants.  3 R. Callmann on Unfair Competition, Trademarks &  Monopolies § 16.44 (4th ed. 1983).  A non-solicitation clause is not a *per se* violation of federal antitrust law, id. (citing Aydin Corp. v. Loral Corp., 718 F.2d 897 (9th Cir. 1983)).

In any event, under Technicolor, the non-solicitation clause is reasonable.  Like the Non-Compete Clause, its geographic and temporal terms are no more than the anti-competitive provisions evaluated in other Hawaiʻi cases.  Nor does the benefit of the Non-Solicitation Clause to Locations appear to deprive the public of these employees' or associates' services or expertise, which remain available to the public for the time they maintain their relationship with Locations, or if they choose to leave Locations without being solicited by Gagnon.

Thus, we conclude that the anti-solicitation clause was not prohibited by HRS § 480-4.

### V.

For the foregoing reasons, we vacate the findings of fact, conclusions of law, and orders on the parties' motions for summary judgment, and remand this case to the Circuit Court for further proceedings.  Because we hold that the CNA is valid and enforceable, the defendants are no longer the prevailing parties and we vacate the orders granting the defendants' respective motions for attorneys' fees and costs, without prejudice to any party moving for an award of attorneys' fees and/or costs at the appropriate time.  We vacate the order denying Locations's motion to file a second amended complaint, without expressing any opinion on whether such a motion should be granted if renewed on

remand.  We vacate the discovery orders, without expressing any opinion on what discovery should be allowed or not allowed on remand.

DATED:  Honolulu, Hawaiʻi, April 15, 2020.

On the briefs:

Paul Alston
Kristin L. Holland
John Rhee
(Alston Hunt Floyd & Ing)
for Plaintiff-Appellant.

Matt A. Tsukazaki
for Defendants-Appellees Lorna
Gagnon & Prestige Realty
Group, LLC.

Duane R. Miyashiro
(Cox, Wootton, Lerner,
Griffin, & Hansen)
and
William J. Kelly
(Kelly & Walker)
for Defendants-Appellees
RE/MAX, LLC and Lorraine
Clawson.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Alexa D.M. Fujise
Associate Judge

/s/ Keith K. Hiraoka
Associate Judge